Appeal of THE THOMAS SHOE COMPANY.                                    Docket No. 209.

> A contribution to a fund raised by business organizations to purchase land upon which a naval ordnance plant is to be erected is not an ordinary and necessary expense in carrying on a wholesale shoe business.
>
> Inventories used in computing the cost of goods sold must be computed both at the beginning and end of each year on substantially the same basis. Discounts, held here to be trade discounts, if deducted in one such inventory, must be deducted in both.

Submitted November 10, 1924; decided December 2, 1924.

*William T. Lively, Esq.*, for the taxpayer.

*Willis D. Nance, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, and TRAMMELL.

This appeal is from a determination by the Commissioner of deficiencies in income and profits taxes for the calendar years 1917 to 1920, aggregating $6,144.30, the deficiency for 1917 amounting to $273.30; for 1918, $5,472.64; for 1919, $285.37; and for 1920, $112.99.

FINDINGS OF FACT.

During the year 1917 the taxpayer, a corporation engaged in the business of selling shoes at wholesale, contributed to the Chamber of Commerce of Charleston, W. Va., the sum of $500 toward a fund then being raised to purchase land upon which it was reported there would be, and subsequently there was, erected an ordnance plant of the United States Navy.

The taxpayer, in taking inventory at the close of the year 1917, valued its stock of shoes at cost less discounts regularly allowed by the factories with which it did business, but entered upon its inventory sheets only the net cost after the deduction of such discounts. The deduction of such discounts was made, either item by item, or from the inventory in a general way, but was substantially accurate.

In taking inventory at the close of 1918 and subsequent years, the taxpayer listed its stock of shoes at list price throughout. From the total inventory of shoes as so made up it deducted a sum in each year computed as the average discount actually realized during the year upon its purchases. This deduction amounted for the year 1918 to $6,631.63 and to comparable sums in the succeeding years.

The discounts claimed by the taxpayer to be deductible in this manner, or directly from each invoice, were in most instances discounts stated upon the bills rendered the taxpayer by the manufacturers as discounts offered for prompt payment. In making

payment upon the invoices, however, taxpayer actually took and the manufacturers allowed the discounts without regard to the date of payment. Interest upon the net price was computed from the due date of the invoice to the date of actual payment and was paid separately from the net invoice price.

An examination of the books of the taxpayer was made by a revenue agent prior to January 12, 1922, and a supplemental examination prior to October 10, 1923, and the reports bearing those dates were submitted in evidence. The agent disallowed the contributions above mentioned as not an ordinary and necessary expense and increased the net income for the year 1918 by increasing the closing inventory in the sum of $6,631.63, on account of discounts deducted from inventory as above set forth. A like adjustment was made for the year 1919, $7,687.53 being added to closing inventory, thereby increasing the net income $1,055.90. In 1920, $7,693.95 was added to inventory, increasing the net income $6.42. The Commissioner confirmed the finding of the examining agent and based the computation of the alleged deficiency thereon.

### DECISION.

The deficiency in tax heretofore determined by the Commissioner is computed upon an erroneous basis. The Board will determine the deficiency, if any, to be assessed upon the basis of revised computations which shall be submitted upon stipulation by the parties or upon motion of either party.

### OPINION.

JAMES: This appeal arises upon two assignments of error, of which one relates to the year 1917 and the other to all years subsequent thereto. The taxpayer alleges that its contribution of $500, as set forth in the findings of fact, was an ordinary and necessary expense for the year 1917. It alleges that the adjustments of inventory made by the agent and confirmed by the Commissioner are arbitrary and distort its income for the taxable year 1918, by changing in that year the substantial basis upon which its inventory had been theretofore and was then and thereafter taken.

We are of the opinion that the contribution of $500 was not an ordinary and necessary expense of this taxpayer. It was a contribution to help business generally in the city of Charleston. It bore no direct relation to the business of the taxpayer. There are here none of the special features which marked the *Appeal of Poinsett Mills*, 1 B. T. A. 6. Unless contributions of every sort deemed beneficial to business, however vague and remote, are to be allowed as deductions, this one can not be permitted. To be deductible as a business expense a contribution, charitable or otherwise, must have in a direct sense some reasonable relation to the taxpayer's business. Any gift or contribution, even to charity, by a business enterprise, may, and usually does, have a business motive. The taxpayer might have given this sum to an orphan asylum in the not unreasonable hope that the business of retailers to whom it sold shoes would increase if the finances of the asylum were put in a flourishing condition by the aid of the taxpayer and others. But since the decision

in *Baldwin Locomotive Works* v. *McCoach*, 215 Fed. 967, it has not been doubted that such contributions are not " ordinary and necessary " business expenses.

The taxpayer contends that the Commissioner has allowed this deduction to others and that in fairness it should be granted in this case. This would seem to be so. But the cases of those other taxpayers are not before us. It may well be that the Commissioner acted properly in their cases upon facts not disclosed in this record. But if he did not so act it is plain that this taxpayer may not plead an improper allowance to others to justify a failure on the part of this Board to reach a proper determination in this case.

The second error alleged appears to arise out of a disagreement over a definition of terms in the niceties of which controversy the Commissioner appears to have lost the essentials of the situation.

The Commissioner has made certain regulations relative to the taking of inventories in which, among other things, he has provided that " trade " discounts may be deducted in pricing inventories and that " cash " discounts may not. The examining agent in applying this regulation appears to have made two errors—first, he did not determine what was the taxpayer's practice in the years prior to 1918, in which year, for the first time, the taxpayer set up a definite adjustment for discounts, and, second, he did not consider all the available evidence in determining whether the discounts deducted were " cash " or " trade " discounts. It appears that the bills, or invoices, for shoes purchased by the taxpayer are as a rule stated, to quote from a sample introduced in evidence, as " 6 per cent 30 days, net after 30 days." It also appears that, by trade practice, as abundantly proven by evidence, these discounts are, as a rule, actually deducted in making payments for goods, whether payment is made on the due date or not. The real nature of a transaction is to be judged by all the evidence, not by isolated items or partial extracts.

We can not withhold the comment that this case would probably never have come before this Board nor this issue ever been raised if the examining agent had preserved a proper judicial attitude toward this taxpayer. His supplemental report evidences resentment that his original findings were disputed, contains many conclusions but almost no facts and evades a clear statement on even the matters which he was evidently instructed to reexamine.

It is important here to state the actual effect of the action of the Commissioner upon the income of this taxpayer. Inventories of those who deal in commodities are necessary in the computation of net income only because they change constantly as to quantity and value and are never, at the end of a year, the same as at the beginning. If the inventory at the end of a year is larger than at the beginning the *increase* represents a gain; if it is smaller it represents a loss. If income were merely computed on sales less purchases, the income of a taxpayer whose profits are being expended in an enlarged stock in trade would be understated while the income of one drawing upon a reserve and reducing his stock would be computed at more than the true amount. And it is likewise true that if the *method* of taking inventory is changed from one year to another a like distortion occurs. The purpose of taking inventories in

business, the purpose of the income tax law in requiring inventories in proper cases is, as is there stated, " in order clearly to determine the income." And this means of course *annual income,* for income over a long period can be quite well determined without them. But in this case the Commissioner, by changing the actual method of the taxpayer, by looking at form and ignoring the substance, has added to income in 1918 the sum of $3,631.63 merely because the taxpayer at the end of that year began showing on his books, in pricing his inventory, a deduction for discounts which he had actually made but had not set down separately on the books in the taking of the in ventory at the beginning of the year. Even if the entire practice of the taxpayer had been erroneous, if the discounts were in fact cash discounts, the Commissioner clearly erred in insisting upon a change in method at the close of the year without making and allowing a compensatory change at the beginning. What the inventory practice is, is of some importance; that the practice should be uniform is of the highest importance.

The taxpayer has submitted computations showing that if its inventory were repriced as of December 31, 1917, on the exact method pursued at December 31, 1918, there would result added income in the year 1917 in the sum of $118.58. This confirms the substantial uniformity followed by it throughout. This computation is adopted and it is directed that the corrected inventory of the taxpayer for December 31, 1917, be used in the computation of the deficiency for that year; that for the years 1918, 1919, and 1920 the inventory used by the taxpayer be used in the computation of net income subject to tax. Inasmuch as the conclusions reached herein allow in part and disallow in part the deficiency heretofore determined by the Commissioner, a recomputation of the tax is necessary for all years to determine correctly the deficiency due. Order settling such deficiency may be submitted on motion by either the taxpayer or the Commissioner, filed with the Board as provided in rule 21, and will be entered seven days after service unless objection is made thereto.