## ELM CITY COTTON MILLS, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

### Docket No. 7636.   Decided October 30, 1926.

A payment made by a corporation to another corporation organized and operated exclusively for the promotion of social welfare work among the employees and families of the employees of the incorporators, for the advancement of the physical, mental and moral interests of such employees and their families, and to assist them in sickness, disability, old age and death, is an ordinary and necessary expense of the business of the petitioner.

*Hatton Lovejoy, Esq.,* for the petitioner.
*Henry Ravenel, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes of $6,900 for the year 1919. The deficiency results from the action of the Commissioner in disallowing a deduction of $15,000 representing the payment made to the Textile Benefit Association.

### FINDINGS OF FACT.

The petitioner is a Georgia corporation with its principal office at La Grange. During 1919 it operated a cotton manufacturing plant employing approximately 450 persons. The employees, with their families, lived in houses owned by the petitioner, which surrounded the plant. From the time it began operation in May, 1907, the petitioner has taken an active interest in promoting welfare work among its employees. Such interest had manifested itself in the construction of school houses, churches, and a Y. M. C. A. building. It contributed to the payment of salaries of teachers and ministers, provided ground for children's gardens, furnished supervision therefor, promoted the activities of the Boy Scouts, the Salvation Army and the Y. M. C. A., which serves men and women, boys and girls, and furnished play grounds and other facilities for various athletic and recreational activities. It also provided nurses and hospital facilities for its employees in case of illness. These facilities were provided by the taxpayer for the exclusive use of its employees and their families. Not over 5 per cent of the attendance at the churches and schools was by outsiders.

Since the organization of the petitioner corporation, only on one occasion has it had any serious labor trouble and that was in 1909. Approximately 10 per cent of its present employees have been with petitioner since it began operations in 1907, and about one-half of the employees have been with it for a period of 10 years. Petitioner's labor turnover has been small and the employees generally are contented. This has been due largely to the promotion of welfare work among the employees. No labor disputes were pending between the petitioner and its employees on December 31, 1919.

On December 30, 1919, the petitioner and four other mills organized the Textile Benefit Association, which was incorporated for a period of 20 years, with the privilege of renewal. As provided in the charter, the corporation was " not to be operated for pecuniary profit but to be operated exclusively for religious, charitable and educational purposes, and for the promotion of social welfare; to promote the welfare of employees and families of employees of the incorporators, their associates and other employers who may become connected herewith; to advance the physical, mental, moral and religious interests of such employees and families of the employees; and to assist them in sickness, disability, old age and death; such corporation to have no capital stock."

The articles of incorporation provide that officers of each mill connected with the association shall select a trustee for each mill or plant and each trustee shall hold office at the pleasure of the officers of the company selecting him. The trustees thus selected, together with a trustee selected by them jointly, compose the board of trustees.

The board of trustees manages, controls and directs the business and property of the association. The association has " the right and authority to receive gifts, bequests and devises, to invest the funds of the corporation in stocks, bonds, choses in action and every character of property real and personal; and to handle and manage such property in such manner as will best insure safety of investment and return upon the same; to act as trustee in any trust created for the promotion of the object of its incorporation; and to apply any money or property in its hands to the promotion of the objects of its incorporation." A majority vote of the board of trustees is sufficient to authorize or accept an amendment to the association's charter or to authorize its surrender.

On December 31, 1919, the petitioner and the Textile Benefit Association entered into a contract containing the following provisions:

That whereas the said Company desires to enter into a contract with the said Association and to pay certain money to said Association for the benefit of the employees and families of employees of the said Company: now, therefore, in consideration of the sum of Fifteen thousand dollars paid by the

said Company to the Association and of such money as may hereafter be paid, the said Association agrees on its part:

First. That upon the death of each employee of the said Company, who has been in such employment for three months immediately prior to such death, the Association will pay the sum of $100.00 toward the burial expenses of the said employee. Said sum shall be paid to the undertaker or to the family of the employee to be used for the said purpose, or to any person who has paid the burial expenses, as may be determined by the Association.

Second. The Association agrees to employ and furnish a competent physician to give a thorough medical examination to each employee of the said company and also to each member of the family of each employee when the said Company so desires, and also to examine each person becoming an employee or desiring to become an employee of the said company at any time hereafter, when so requested.

Third. The Association agrees that the remainder of the above amount paid by the Company to the Association as well also as any amount hereafter paid by the said Company to the said Association under this contract shall be used and applied by the said Association for the benefit of the employees and families of the employees of the said Company for such other purposes as shall be agreed upon by the said Association and the officers of the said Company. Such money is not to be held and accounted for separately; but is to become a part of the common assets of the Association and subject to its liabilities and contracts.

Fourth. It is the intention and desire of the parties thereto that the amount received shall be invested and the income therefrom primarily to be used for the purpose stated, and that the corpus may be increased as a basis for and income to be used in increasing proportions and for other and wider purposes; for the benefit of the employees and families of the employees in whose interest this contract is made, but if it should become necessary to carry out the terms of this contract or when otherwise so agreed by the said Association and the said Company, the corpus may be used for such purpose.

Fifth. In the event that in the future the administration of these funds and the execution of this contract shall prove unsatisfactory, or should become impossible for any reason, this contract may be rescinded by either party and thereupon the Association shall repay to the said Company the remainder in its hands from the money paid into the said Association by the said Company, or the said Association shall pay to the said Company the proportion of the net assets of the said Association, which the amount paid in by the said Company bears to all the money paid to the Association by the said Company and by other companies under similar contracts.

The petitioner, on the 30th day of December, 1919, made a contribution of $15,000 to the association. This was about 4 per cent of the petitioner's payroll.

By the end of 1919, the amount of $105,000 had been paid in to the association by the incorporators. Part of the amount paid in has been expended under the provisions of the contract. However, the greater part has been invested. Of that invested, a portion was used to purchase stock of the incorporators, the remainder being invested in securities of other corporations. The petitioner paid in to the association an additional $15,000 in 1920. The books and records of the association are kept separately from those of the

petitioner or of the other incorporators. The property of the association is held in its own name and separate and distinct from that of the incorporators. The amounts paid in by each of the incorporators are paid into a common fund.

The activities of the association down to date have consisted largely of paying $100 toward burial expenses of employees of the different mills which organized it, as provided in the contract; providing nurse and hospital care for employees, and giving physical examinations to employees and their families. Prior to entering into the contract with the association, the petitioner's hospital budget ran about $12,000 a year. Since that time petitioner does not furnish nurses or hospital facilities, except to furnish a janitor in times of epidemics.

While the trustees have exercised great care in the management of the association's funds, they have been unable to keep the expenditures below the amounts received from the investments. It was the purpose to accumulate the association's assets to the point where the funds would be sufficient to begin the payment of pensions to old and disabled employees of the different members of the association.

### OPINION.

TRAMMELL: The benefits rendered by the association were the physical examination of all of the petitioner's employees and their families, the payment of $100 for burial expenses of deceased employees, and the furnishing of nurses to employees in the case of illness. Of these the physical examinations and burial payments were benefits not previously offered to its employees by the petitioner. The nursing service previously furnished by the petitioner to its employees was, under the contract, taken over and rendered by the association.

The expenditures made in connection with furnishing nurses and hospital facilities to sick employees and other benefits derived from the association produce a direct benefit to the petitioner. The method by which such services are furnished—directly by the employer itself or through another as in this case—does not change the result. In this case there was a material saving in expenses, since the petitioner's hospital budget of about $12,000 was almost eliminated, in addition to the other direct benefits.

It is our opinion that an expenditure made under the conditions presented by this case is one which can be considered as ordinary and necessary expense of the business of this petitioner. *Appeal of Poinsett Mills*, 1 B. T. A. 6.

*Judgment will be entered on 15 days' notice, under Rule 50.*