SUPERIOR POCAHONTAS COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5377. Promulgated June 16, 1927.

　　1. The cost of certain items of mining equipment should be capitalized and not deducted as ordinary and necessary business expenses.

　　2. A contribution made under the present facts is deductible as a business expense.

*Ward Loveless, Esq.*, for the petitioner.
*J. Harry Byrne, Esq.*, for the respondent.

This proceeding is for the redetermination of deficiencies in income and profits taxes for 1919 and 1920, in the respective amounts of

$339.58 and $18,890.66. The only questions at issue are whether expenditures made in 1919 and 1920 for certain items are deductible, and whether a contribution of $1,000 in 1920 for the reconstruction of a church is deductible.

FINDINGS OF FACT.

The petitioner is a West Virginia corporation engaged in coal mining. It operates four mines at Davy, McDowell County, W. Va., hereinafter referred to as Mine Nos. 1, 2, 3, and 4.

In 1919 the petitioner encountered an unusually hard slate rock formation in Mine No. 3 which required the use of a power drill. Accordingly a rock power drill was purchased at a cost of $1,002.48. The use of the rock drill did not increase the production, but without its use, production in Mine No. 3 would have decreased.

During the same year the working faces had progressed so far from the tipple in Mine No. 4 that the owners were confronted with the problem of buying additional mine motors and locomotives or laying heavier steel rails and increasing the speed on the trips. The owners decided it would be cheaper to lay heavier rails and speed up transportation. New steel rails were therefore laid between the tipple and the mine and also inside the mine between the tipple and the main side track. The cost of the steel rails was $1,502.63.

For the year 1919 the petitioner charged to two accounts known as "Boarding House Fixtures" and "Hotel Fixtures," the cost of certain items in the amounts of $609.15 and $513.51, respectively. The additions to these accounts were turned in monthly by the company store. The company store was burned in July, 1924, destroying the records containing the itemized accounts. The accounts included items such as cheap rugs, electric light bulbs, dishes, mattresses, window blinds, etc. The policy of the company has always been to charge similar items to expense, and the records prior and subsequent to those destroyed showed such items as those listed above in these two accounts.

In 1920 it became necessary to install new fans in Mines No. 2 and No. 3 because of the lack of proper ventilation. The old fans were crude homemade affairs and had been in use since 1910. As the working faces progressed away from the mine openings the demand on the air current increased. Some of the former openings which helped ventilate the mine had been closed by the extraction of coal, thus increasing the need for mechanical ventilation. The fan installed in Mine No. 2 in 1920 cost $1,432.73; the fan in No. 3 cost $1,894.72. The old fans were scrapped after the new ones were installed. The new fans were installed near the location of the old in both mines, the installation being made without stopping operations.

During 1920, due to a break in the roof of Mine No. 3, approximately one-third of the working faces were cut off by water which flooded one of the main haulways.  Petitioner purchased a pump to meet the emergency at a cost of $510, and shortly thereafter purchased an additional pump at a cost of $485.  The two pumps were continuously in use until the water could be ditched and drained out of the mine by gravity.  Petitioner ordinarily keeps several pumps on hand to take care of the water that gathers in the mines.  The break in this particular case was unusual and a large quantity of water flooded a portion of the mine.

Petitioner also purchased an additional gathering locomotive for Mine No. 4 during 1920.  This purchase became necessary because of increasing length of the hauls as the working faces receded from the side track.  The locomotive was of the electrical type, costing $5,551.96 and is still in use.

Late in 1919 or early in 1920 the Methodist Church at Davy burned down.  Davy had two churches, a Methodist and a Baptist, but only the former had a regular minister.  The population of Davy was approximately 1,500 and 90 per cent of its wage earners were employed by petitioner.  The employees of the petitioner comprised 75 to 90 per cent of the Methodist congregation.  The president of the petitioner on the recommendation of the minister donated $1,000 to help rebuild the church, which constituted the only community or social center in Davy.  The donation was considered by both officers as an expense item to the corporation and it was anticipated that certain benefits would result to the petitioner therefrom.  One of the employees of the petitioner assisted the regular minister in conducting the services and often filled the pulpit himself.  At the present time this employee is the regular minister and is paid $50 per month for his welfare work in addition to his salary as an engineer.  The church property is owned by the board of trustees of the church.

The petitioner deducted the cost of the above items and its contribution to the church as ordinary and necessary expenses, which deductions were disallowed by the Commissioner.

### OPINION.

MORRIS: The mine equipment and the additions to the plant which were purchased in either year, are in our opinion capital expenditures, and as such should be depreciated over their useful life.  The rock power drill was a permanent addition to the mining equipment, and the same is true of the mine fans installed in Mines Nos. 2 and 3 in the year 1920.  The two pumps purchased in 1920 became a part of the regular mining equipment.  One of the witnesses testified that the petitioner kept a number of pumps on hand at all times as water

was constantly accumulating in the mine, which required the use of pumps. The mere fact that these two particular pumps were purchased to meet an emergency situation does not justify the charging off of the expenditures as ordinary and necessary business expenses. The electric locomotive which was purchased in 1920 is still in use, clearly indicating that it was a capital addition. See *Appeal of Union Collieries Co.*, 3 B. T. A. 540; *Appeal of Kirk Coal Co.*, 3 B. T. A. 755.

The cost of steel rails was held to be an ordinary and necessary expense in the *Appeal of Bruin Coal Co.*, 1 B. T. A. 83, but since that case was promulgated, the *Appeals of Union Collieries, supra*, and *Kirk Coal Co., supra*, have expressly disallowed the cost of steel rails as a business expense, holding that such expenditures were capital items and expressly overruling the *Appeal of Bruin Coal Co., supra*, in this respect.

Although, due to the destruction of certain books by fire, a detailed statement of the items charged to " Boarding House Fixtures " and " Hotel Fixtures " was not available, the testimony shows that such items as cheap rugs, mattresses, dishes, window shades and electric light bulbs comprised the list, and that the cost of such articles was uniformly charged to expense by the petitioner. We are satisfied that the petitioner is entitled to the deduction of $609.15 and $513.51 as claimed.

The remaining question relates to the contribution to the Methodist Church. If this contribution had a reasonable relation to petitioner's business, it is allowable as a business expense, *Appeal of Thomas Shoe Co.*, 1 B. T. A. 124. That it had such a relation can not be doubted in view of the particular facts under which the contribution was made. In our opinion the contribution may well be considered as an ordinary and necessary business expense. See *Appeal of Poinsett Mills*, 1 B. T. A. 6; *Appeal of Holt-Granite Mills Co.*, 1 B. T. A. 1246; *Elm City Cotton Mills* v. *Commissioner*, 5 B. T. A. 309; *Hibbard, Spencer, Bartlett & Co.* v. *Commissioner*, 5 B. T. A. 464.

*Judgment will be entered on 15 days' notice, under Rule 50.*