KARGES HOSIERY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11384.   Promulgated October 11, 1927.

Petitioner consistently took its inventory at the close of each year from 1914 to 1921, inclusive, on the basis of " cost or market, whichever is lower." *Held,* that the action of the Commissioner in charging the petitioner's inventory at December 31, 1920, from a cost or market, whichever is lower, to a cost basis was in error.

*Alton Gumbiner, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits tax for the calendar year 1920, in the amount of $8,077.61, only $6,418.23 of which is in controversy. All allegations of error stated in the petition have been withdrawn, except that the Commissioner erred in increasing the petitioner's inventory at December 31, 1920, in the amount of $16,523.11.

### FINDINGS OF FACT.

The petitioner is a Missouri corporation, with its principal place of business at St. Louis, and is engaged in the retail hosiery business. Its main store is in St. Louis. It operates a branch store at Kansas City, Mo. The petitioner keeps its books of account and makes its income-tax returns upon the basis of a calendar year.

Ever since 1914 the petitioner has taken inventory of merchandise at the close of the year consistently on the same basis, which has

been " cost or market, whichever is lower." Regular par value merchandise was never valued at cost unless the cost was lower than the market. And conversely, it was valued at market only when the market was lower than the cost. The under par merchandise was based upon selling price, less 25 per cent, which the experience of the petitioner had shown was the approximate cost of selling.

In the taking of an inventory each item or unit was counted, slipped, and the officers in charge of the inventory removed the slips out of the boxes, recopied the numbers and called the numbers aloud to the other officers in charge who wrote down the numbers, description and quantity, and set down the cost as taken from the bottom of the boxes, the cost having originally been placed on the bottom of the boxes from the original invoice when the goods were first received. In the first column of the inventory appeared the style number, next the description, next the quantity, then the cost which was entered for comparison with the valuation or with the market. The stock was at that time physically examined by two or more of the officers in charge and the condition of the particular lot was noted as to whether the sizes were in salable condition, whether it had a full range of colors, whether it was par or under par merchandise, whether it was damaged, and whether or not the colors and styles were salable at their normal prices. The decision as to whether or not a given lot of merchandise was subnormal or under par was the result of conferences between experienced officers of the company drawing upon their knowledge of the hosiery business and their experience in the selling of the merchandise, from knowledge of the then present demand for colors and styles and their practical experience in the retail selling of merchandise of this class. The decision was made in a conference held at the time the inventory was taken. These officers fixed the price of the subnormal or under par merchandise with the idea of the best price at which it could be sold, in mind. The under-par merchandise was inventoried at 75 per cent of the estimated selling price and was immediately placed on sale at the estimated selling price.

As to the normal merchandise, where the market was higher than cost, the lower of the two was extended and if the cost was lower, cost would be used. In the summation of the inventory, if market was lower, market would be used. The market price was obtained from constant contact with the market. Close contacts were maintained at all times with the market, and especially during the inventory period.

In the hosiery business, such as operated by the petitioner, the normal condition of a hosiery stock on December 31 is depleted. After the holiday trade much that is left is odds and ends and unde-

sirable patterns, colors, and last year's styles which have been abandoned. There are innumerable small lots in broken sizes and discontinued colors and all these are under par merchandise. Much of the merchandise has been damaged by handling during the holiday period. Some of the merchandise could be redyed and made more salable thereby. There was always a danger, however, that redyed merchandise would be streaked and the mercerized hosiery might be weakened by redying. Heavy woolen fancy hose became under-par merchandise after January 1, along with fancies, embroideries, laces, and elaborate styles which can only be sold for gifts. All these factors were taken into consideration in determining the estimated selling prices of such hosiery.

The cost of hosiery showed an upward trend from the pre-war years until after January 1, 1920. The result was that a comparatively small quantity of the under-par merchandise was reflected in the inventories taken prior to 1920 at less than cost. There was a severe slump in the market about the middle of 1920 and although the inventory taken at December 31, 1920, was taken on the same basis as the inventory taken at the close of the preceding year, the inventory taken was in many instances at less than cost.

In the examination of the petitioner's tax return for 1920 the Commissioner increased the original inventory reported from $45,-241.48 to $61,764.59. This was for the purpose of bringing the inventory at the close of the year up to cost. In making his adjustment the Commissioner assembled all available purchase invoices for the year 1920 and applied to stock numbers shown on the inventory the cost thereof. Only a portion of such stock numbers could be traced to purchase inventories. The percentage of mark down shown on certain selected items of the inventory was applied to the whole inventory and the Commissioner determined cost in this manner, and added to the net income reported by the petitioner for 1920 the above indicated amount of $16,523.11.

OPINION.

SMITH: The point involved in this proceeding, namely, whether the inventory at December 31, 1920, was taken upon a proper basis was substantially covered by the Board in *Appeal of Thomas Shoe Co.*, 1 B. T. A. 124. In that case it was held that inventories used in computing the cost of goods sold must be computed both at the beginning and end of each year on substantially the same basis. At page 127 the Board said:

Even if the entire practice of the taxpayer had been erroneous, if the discounts were in fact cash discounts, the Commissioner clearly erred in insisting upon a change in method at the close of the year without making and allow-

ing a compensatory change at the beginning. What the inventory practice is, is of some importance; that the practice should be uniform is of the highest importance.

In this proceeding there is no contention that the basis of cost attempted to be reached by the respondent is the same basis upon which the inventory was taken at the close of the preceding year. The evidence of record indicates that the respondent's agent who investigated the taxpayer's books of account refused to consider an adjustment of the inventory at the close of 1919 for the reason that the statute of limitations had operated to bar the assessment of any additional tax if such might be found for that year.

In *Appeal of The Buss Company*, 2 B. T. A. 266, the Board said at page 267:

> The sole purpose of inventory valuation is to reflect income as clearly as possible. The result of the Commissioner's computation is obviously to distort the true situation, * * * However faulty the taxpayer's method was, we believe that greater weight should be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used substantially reflects the income. This rule has been given great weight both by the Commissioner and the Board. *Appeal of The Thomas Shoe Company*, 1 B. T. A. 124, and *Appeal of George C. Peterson Co.*, 1 B. T. A. 690.

See also *Appeal of C. Willenborg & Co.*, 5 B. T. A. 788.

It appears to us that the only material question involved in this proceeding is whether the inventory on under par merchandise, taken in the manner in which it was taken by the petitioner, was the taking of an inventory at "market" within the meaning of the statute, and the regulations. The respondent has particularly covered this question in article 1582 of Regulations 45, as amended by Treasury Decision 3296, the amended article reading in part as follows:

> Any goods in an inventory which are unsalable at normal prices or unsalable in the normal way because of damage, imperfections, shop wear, changes of styles, odd or broken lots, or other similar causes, including secondhand goods taken in exchange, should be valued at bona fide selling price less cost of selling whether basis (a) or (b) is used, * * *. In respect to normal goods whichever basis (a) or (b) is adopted must be applied with reasonable consistency to the entire inventory. Taxpayers were given an option to adopt the basis of either (a) cost or (b) cost or market, whichever is lower, for their 1920 inventories, and the basis adopted for that year is controlling and a change can now be made only after permission is secured from the Commissioner.

This ruling of the Commissioner appears to us to be in conformity with the intendment of the statute that income be correctly reflected. The evidence shows that the petitioner took its inventory at the close of 1920 strictly in accordance with the regulations of the Commis-

sioner as amended. The action of the respondent in increasing the inventory at December 31, 1920, in the amount of $16,523.11, was in error.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by LITTLETON and LOVE.