THE EVENING STAR NEWSPAPER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61870, 66855. Promulgated July 27, 1933.

*Edward H. Hart, Esq.*, for the petitioner.
*W. F. Wattles, Esq.*, for the respondent.

764

OPINION.

MARQUETTE: The sole question for decision is whether the petitioner should be permitted to deduct from its gross income its contributions of the Washington Community Chest. Such a contribution when in the nature of a gift is deductible to a limited ex-

tent from the gross income of an individual. Sec. 23 (n) (2), Revenue Act of 1928. No such deduction is allowed to a corporation. But either may deduct such a contribution when it is shown that the contribution is in fact a business expense. *American Rolling Mill Co.* v. *Commissioner*, 41 Fed. (2d) 314; *Killian Co.*, 20 B.T.A. 80. Since a contribution may be either a charitable gift or a business expense, a taxpayer in order to secure a deduction as a business expense must show by sufficient evidence that the expenditure had in a direct sense a reasonable relation to its business. (*Thomas Shoe Co.*, 1 B.T.A. 124) or, as said in *Killian Co., supra*, it must be " reasonably motivated by or related to the proper conduct of the business." See also *American Rolling Mill Co.* v. *Commissioner, supra.* Tested by these standards we think that the petitioner has shown that its contributions were ordinary and necessary expenses within the meaning of section 23 (a) of the Revenue Act of 1928. *Harris & Co.* v. *Lucas*, 48 Fed. (2d) 187.

The petitioner depends on its advertising revenue for its profits and these in turn depend on the circulation of the Star. By a long and consistent policy of advocating those causes and policies, civic and political, which its management believed to be for the good of the residents of Washington, this paper now enjoys the largest circulation of any paper in that city. Its advocacy of the community chest was in direct line with this policy. It could not have done otherwise without to some extent forfeiting the good will of its readers. It advocated and insisted on giving by all, rich and poor, and giving until it hurt. While other papers also took part, the Star took the lead—a course to be expected of this family newspaper, devoted especially to local interests. This was not only a proper policy; it was good publicity. It was the same character of publicity by which the Star had previously advertised itself and which has secured for it the prestige it enjoys. These contributions were given publicity by the workers in the campaign and advertised by the Star on its front pages " shamelessly ", to use the word of its business manager.

The contributions were reasonable in amount when compared with the net income of the petitioner. In our opinion they had a reasonable and direct relation to its business. They were the result of a policy long continued with the results shown in our findings. In view of the attitude of this paper to the people of the city, it could not well have declined to take the lead in the campaign for subscriptions and, having taken the lead, it could not have afforded to refuse to do what it was urging others to do. Such was the judgment of the petitioner's directors who viewed the matter as a purely business proposition. After a mature consideration of all the facts presented we concur.

Counsel for the respondent points out that the petitioner's witnesses were unable to show any specific gain in dollars arising from the contributions. This is an unreasonable demand. *Alexander Sprunt & Son, Inc.*, 24 B.T.A. 599; *Matson Navigation Co.*, 24 B.T.A. 14. It is sufficient that the directors had reasonable grounds to believe that their actions would be beneficial to the corporation. It was not necessary for them to expect additional gain. It was sufficient that they, with reasonable grounds, expected that it would prevent a loss. *Kornhauser* v. *United States*, 276 U.S. 145. Under either aspect we think the petitioner is entitled to the deductions claimed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

SEAWELL, dissenting: The Washington Community Chest is a charity, its purpose the alleviation of the poor. Contributions to it are prima facie charitable. Indeed, it is difficult to see how they could be otherwise. It is hard for me to perceive that donations to it could be made to advance, in any way as a business is carried on, the giver's "trade or business"; or to accumulate wealth for the donor; that is, for any of those things which a trade or business, carried on, has for its object. Newspapers are quasi-public institutions, and accept as their natural duty the creation and maintenance of a healthy moral public sentiment, and the guardianship of the good name and fame of the community where they circulate. The Star, with its exceptional facilities, has for years lived well within this duty and prospered. Content that its conduct has been conformable to its creation, at the first it demanded no deduction in taxes because of its contributions for the relief of contemporary men through this agency of the Community Chest. Its former generous contributions recognized by it to have been mere charitable donations, tend strongly to estop us, and it, to claim them now as a business expense. There is nothing in the years here under review to change the quality of these donations from that of former years.

But such contributions can not be, it seems to me, in any sense business expenses such as are contemplated under the statute. (Section 214 (a) of the Revenue Act of 1926.) Every good deed produces its reward, often in a material way; but good deeds performed with hope of material results are not necessarily a business expense even when money is used. There must be that quality and character of expense usually understood as the *ordinary* and *necessary* outgo in carrying on a business. The expenditure to a charity that men charitably minded may think well of the contributor and be

possibly drawn to patronize the contributor is too remote to be considered as a business expense. It is certainly not of the ordinary and necessary kind.

*American Rolling Mill Co.* v. *Commissioner*, 41 Fed. (2d) 314, cited as authority for the conclusion of the majority opinion, occupies a twilight zone and is, in my judgment, as far as the law can be stretched. The mill company employed half the wage earners of the city where it was located. To promote the contentment of these wage earners, and prevent strikes among them, and secure their permanent employment for the petitioner and advance their efficiency the petitioner, the mill company, contributed to the erection of a Y.M.C.A. and a hospital where the sick and injured employees might receive rest, recreation, care and treatment. It is inconceivable that petitioner in this case expected any of its relatively few employees in Washington to receive alms from the Community Chest, or that they would be restrained from moving away and leaving petitioner's employ, or prevented from going on a strike or becoming discontented, by reason of the fact that the Chest was established here.

The case of *Eitingon-Schild Co.*, 21 B.T.A. 1163, wherein a contribution made to the "Charity Chest of the Fur Industry of the City of New York," by the corporation, a world-wide dealer in furs, was denied as a business expense, notwithstanding in that case it was found as a fact that the contribution to the charity possessed a "definite advertising value" to the petitioner, is direct authority against the majority opinion in this case.

Congress intended to differentiate between a business expense and a charitable donation, but the prevailing opinion would seem to make them synonymous when desired.

ARUNDELL and MATTHEWS concur in the above dissent.

---

BLACK, dissenting: I think the majority opinion is in conflict with our decision in *Eitingon-Schild Co.*, 21 B.T.A. 1163. I believe that decision interpreted the law correctly and I see no reason why we should depart from the rule there laid down.

MORRIS concurs.