C. E. WILSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

REX P. ARTHUR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62820, 62821.   Promulgated February 6, 1934.

*Dayton Denious, Esq.,* for the petitioners.
*James K. Polk, Jr., Esq.,* for the respondent.

OPINION.

LANSDON: The respondent has determined deficiencies for the year 1929 in the respective amounts of $199.25 and $2,813.94. The single

issue, common to both proceedings, is whether the petitioners, as a partnership under the trade name of C. E. Wilson, Agent, were dealers in securities in the taxable year and entitled to inventory certain stocks held at the end of the year at cost or market, whichever was lower, under section 22 (c) of the Revenue Act of 1928 [1] and article 105 of Regulations 74.[2] The two proceedings have been consolidated for hearing and report.

The petitioners are individuals residing in Denver, Colorado. Until some time in July 1929 petitioner Rex P. Arthur was an employee of Otis & Co., a partnership operating as stockbrokers in Cleveland, Ohio, with a branch office in Denver, in the capacity of salesman or customer's man. In July he became a partner in such partnership and so remained until the end of the year. Throughout the entire year petitioner C. E. Wilson was a partner in Otis & Co.

On February 5, 1929, the petitioners entered into a written agreement to form a partnership between themselves under the trade name of C. E. Wilson, Agent, for the purpose of " trading in stocks at Otis and Co." The agreement provided that all profits and losses, contributions and withdrawals should be shared equally. Arthur contributed only his knowledge and experience in the business of selling securities and all the necessary cash was furnished by Wilson.

C. E. Wilson, Agent, purchased practically all its stocks from Otis & Co. and sold them to customers secured by Arthur, who was generally known in Denver as a salesman for that concern. The great bulk of the securities so purchased were stocks in which Otis & Co. were specialists and as to which their inventories were very large. In a few instances stocks were purchased from other brokers.

---

[1] (c) *Inventories.*—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

[2] ART. 105. *Inventories by dealers in securities.*—A dealer in securities, who in his books of account regularly inventories unsold securities on hand either—

(a) At cost;

(b) At cost or market, whichever is lower; or

(c) At market value,

may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner. For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as here provided may include only those held for purposes of resale and not for investment. Taxpayers who buy and sell or hold securities for investment or speculation and not in the course of an established business, and officers of corporations and members of partnerships who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this rule.

In its operations C. E. Wilson, Agent, would usually arrange for the sale of certain stocks at the market price and thereafter perform its obligations by purchasing such stocks from Otis & Co. and reselling the same to the customers already willing to buy. In some instances, however, large blocks of securities were bought from Otis & Co. and held until they could be disposed of to purchasers. In all purchases from Otis & Co., C. E. Wilson, Agent, was allowed a price between bid and asking prices and, barring a fall in the market, profit was certain.

C. E. Wilson, Agent, conducted its business in the offices of Otis & Co., where Arthur and Wilson each had office rooms assigned them by that concern. It was not listed as an investment banker or broker in the telephone or city directory and did not so advertise itself in the newspapers, but it was licensed as a banker by the city of Denver. It was known throughout the financial district of Denver as a merchant of the securities of Otis & Co. It kept no books other than a file of monthly statements of its accounts with Otis & Co. which were supplied by that concern.

At December 31, 1929, C. E. Wilson, Agent, had unsold stocks in its account with Otis & Co. for which it had been charged $214,497.98 and which on that date had a market value of $136,625. Petitioners now claim that C. E. Wilson, Agent, as a dealer in securities, was entitled to inventory such unsold stocks at cost, or cost or market, whichever was lower. The respondent has determined that such partnership was not a dealer in securities and therefore not entitled under the law and regulations to inventory stocks on hand at the end of the taxable year.

The petitioners contend that under the provisions of section 23 (e) (1) of the Revenue Act of 1928, as members of the partnership of C. E. Wilson, Agent, they sustained a deductible loss in the operation of a trade or business. The evidence discloses that neither of the petitioners severed his connection with Otis & Co. at any time during the taxable year. It is fairly clear that practically all the securities handled by the partnership were bought from Otis & Co. It is not clear that any such securities were actually delivered to the partnership. Apparently the whole amount of the alleged cost of stocks on hand at the close of the taxable year was merely a charge against the partnership on the books of Otis & Co. It is entirely consistent with the few facts established in the record that these petitioners were partners in a trading account with the company by which they were employed. This inference is strongly supported by the language of the agreement which expressly states that the partnership was formed for the purpose of trading in stocks. There is a very wide difference between a dealer and a trader in stocks. Of

course each may sustain operating losses, but such losses are computed by entirely different methods. A dealer is entitled to use an inventory in the determination of its income for any taxable period, while a trader must compute gain on the basis of receipts and disbursements, and as to any stocks on hand determination of gain or loss must be deferred until sale or other disposition thereof.

In the exercise of discretion conferred on him by the law, the respondent has determined that C. E. Wilson, Agent, was not a dealer in stocks and therefore not entitled to use an inventory in the computation of its income for the taxable years. The petitioners have failed to overcome the presumption that the determination of the respondent is correct.

*Decision will be entered for the respondent.*