ALFRED E. HAMILL, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 71808–71810, 72923–72926. Promulgated June 19, 1934.

*Addison S. Pratt, Esq.*, for the petitioners.
*Lloyd W. Creason, Esq.*, for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Arnold M. Ellert; John McCarthy; Stewart S. Hathaway; Howard C. Smith; John Norrish Thorne; and G. Bruce Wallace.

**OPINION.**

STERNHAGEN: Since each of these proceedings is derivative from the determination of the partnership income, the partnership will be treated as if it were the single party in interest. On the part-

nership return for 1930 (not in evidence), it deducted $121,415 as an inventory loss, and this item the respondent disallowed with a somewhat ambiguous statement. At the beginning of the trial the petitioners conceded that the deduction was in any event too large because the partnership had in its computation omitted to apply the first-in first-out rule to securities which had been sold during the year, thus applying to the remaining inventoried securities an improper cost basis. The issue is thus confined to the propriety of a deduction of $92,242.50. This figure represents a " write-down " of 10 blocks of securities owned at the end of 1930 to their market value on December 31. The securities being still on hand at that time, such deduction is only available to the partnership if it has the right to the use of an inventory in the computation of its taxable income. This is the issue.

The method of determining taxable income by the use of inventories has always been recognized as special and as involving problems of general administration peculiarly cognizable by the Commissioner. Cf. *Atlantic Coast Realty Co.*, 11 B.T.A. 416. Section 22 (c), Revenue Act of 1928, is necessarily the foundation for any claim of a taxpayer relating to an inventory. Like its predecessors in earlier statutes, the section is as follows:

> Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Fortified with such a clear sanction in the statutory grant of power, the administrative determination in such a case must survive all but the strongest attack. Short of being arbitrary or capricious or based on a clear demonstration of error, the determination in any single instance ought not to be disturbed. This is not a matter of jurisdiction, for the Board clearly has the power of review, *Blair* v. *Oesterlein Machine Co.*, 275 U.S. 220, but is rather an attitude of the Board in the exercise of its jurisdiction not to interfere lightly with general administrative matters which the Congress has entrusted to the Commissioner's discretion. In *Lucas* v. *Kansas City Structural Steel Co.*, 281 U.S. 264, the Supreme Court said, in 1930:

> First, whether in a particular business inventories are necessary for the determination of income is a practical question left by the statute to the judgment of the Commissioner. On that account he and the company did not differ. In every year, it, without any question or protest, used inventories in making its return. The dispute was merely on the method of valuation to be adopted for that part of the stock which it calls its normal stock.

And in closing its opinion, the Court said: "The company's case falls far short of meeting the heavy burden of proving that the Commissioner's action was plainly arbitrary."

In 1931 the Circuit Court of Appeals for the Fourth Circuit said, in *Finance & Guaranty Co.* v. *Commissioner*, 50 Fed. (2d) 1061:

As will be seen from the Act, Congress plainly placed the question of the proper use of inventories within the opinion of the Commissioner, and that question was left by Congress to the discretion of the Commissioner. In such a case a heavy burden of proving that the Commissioner's action was plainly arbitrary rests upon the taxpayer. *Lucas* v. *Kansas City Structural Steel Co.*, 281 U.S. 264. Where a statute commits to an executive department of the government a duty required in the exercise of an administrative discretion the decision of the executive department, as to such questions is final and conclusive, unless it is clearly proven arbitrary or capricious or fraudulent, or involving a mistake of law. * * * A study of the records leads us to the conclusion that the action of the Commissioner was not only not arbitrary or capricious but was correct.

These cases indicate a heavy burden upon the taxpayer who undertakes to overthrow an administrative determination in respect of inventories—a burden undoubtedly heavier than that of overthrowing a purely factual determination upon which the ultimate determination must depend. It was apparently in the latter class of dispute that the Circuit Court of Appeals for the Second Circuit regarded *Harriman Nat. Bank* v. *Commissioner*, 43 Fed. (2d) 950, although the dissenting opinion therein supports a doubt.

The difficulty of having such questions as this determined judicially, whether by the Board or by the courts, is manifest. *Riverside Mfg. Co.* v. *United States*, 67 Ct. Cls. 117; certiorari denied, 279 U.S. 863; *Clark Distilling Co.* v. *United States*, 66 Ct. Cls. 726; certiorari denied, 279 U.S. 868. The statute apparently contemplates not so much the right of taxpayers to use inventories as their duty to do so when necessary clearly to determine income, together with a power in the Commissioner to enforce the duty, *Thomas Shoe Co.*, 1 B.T.A. 124. While this does not justify the Commissioner in arbitrarily requiring inventory in one case and not in another similarly situated, the issue here is not framed along that line. The language of the statute alone would give no right to a taxpayer to demand the use of an inventory if his income could be clearly determined without it. This Board has no data, outside the evidence in any case, to indicate whether as to any taxpayer or class of taxpayers inventories are necessary.

The Commissioner, however, has not restricted the use of inventories to cases of necessity, but has made their use permissive to all who meet the conditions prescribed by his general regulations. Perhaps we should assume from Regulations 74, article 105, that

as to all dealers therein described the use of inventories has been found to be necessary to a clear determination of income, although it seems hard to believe that frequently income of such a dealer could not be accurately computed by awaiting the ultimate disposition of the securities and then offsetting cost against sale price. The regulation is as follows:

ART. 105. *Inventories by dealers in securities.*—A dealer in securities, who in his books of account regularly inventories unsold securities on hand either—

(a) At cost;

(b) At cost or market, whichever is lower; or

(c) At market value,

may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner. For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as here provided may include only those held for purposes of resale and not for investment. Taxpayers who buy and sell or hold securities for investment or speculation and not in the course of an established business, and officers of corporations and members of partnerships who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this rule.

The petitioners have presented their case largely as if the only question to be determined is whether the partnership was in 1930 a dealer in securities, an affirmative decision on that question resulting in the approval of the deduction claimed. The issue, however, is not so simple, and it has not been so simply pleaded. Claimed under article 105, the deduction must be brought in all respects within it. It is not enough that the taxpayer has bought some securities for resale, as is clear from the evidence, at least as to some of the comparatively small number of securities on hand December 31, 1930. Even if, by such evidence, he is to be held to be a dealer *pro tanto*, he must also show that the other conditions imposed by the regulation upon such a dealer have been fulfilled. The partnership predicates its argument largely upon the postulate that its character as a dealer has existed since 1874 because of its commercial paper business, which is a large part of the whole. But, so far as this record shows, it has never accounted for its commercial paper transactions by the inventory method and has never used such

method in its tax returns. Furthermore, it does not appear that the inventory method has been consistently applied to the small part of the business consisting of buying and selling other "securities", even assuming that the segregation of such part is practical and has been made. "What the inventory practice is is of some importance; that the practice should be uniform is of the highest importance." *Thomas Shoe Co.*, 1 B.T.A. 124. The Circuit Court of Appeals, in *Harriman Nat. Bank* v. *Commissioner*, *supra*, held that a bank which, in addition to its general banking business, was a dealer in securities to a large and substantial extent was, upon the evidence, entitled to use an inventory including short term Government notes; but we do not understand that opinion to hold that where the portion of the business is slight the Commissioner is equally required to permit inventories to be used. Here the proportion of business to which the inventory is sought to be applied comprises less than one half of one percent of the total business. The distinction between commercial paper and the partnership's dealings therein, on the one hand, and securities (stocks, bonds, equipment trust notes, etc.), and the partnership's diverse methods of doing business in relation thereto, on the other hand, is subtle. The evidence in this case leaves the classification not clear or free from doubt. There is substantial room for confusion in an attempt to vary the treatment for tax purposes of the activities of a single taxpayer who in the same year engages in underwriting, in syndicate and pool participation, in brokerage, in financing, and in purchase and sale. Trading, dealing, investment, and speculation are not sharply defined. We can readily believe that there would be substantial administrative difficulty in auditing the petitioner's accounts for the purpose of determining income, part of which is to be based on inventories and most of which is not.[2] As to most of its business, it appears that the turnover is so rapid that there is no occasion for the use of inventory.

The conclusion, therefore, must be that the record is insufficient to establish either the necessity of inventories as contemplated by the statute or the fulfillment of the condition prescribed by the Commissioner in his regulations for the permission to use inventories. The determination of the deficiency is, therefore, sustained.

*Judgment will be entered under Rule 50.*

---

[2] The difficulty is illustrated in the following cases involving inventory of securities: *Clinton Graham*, 1 B.T.A. 775; *Pan-American Bank & Trust Co.*, 5 B.T.A. 839; *Franklin Q. Brown*, 9 B.T.A. 965; *Clinton Gilbert, Jr., Executor*, 20 B.T.A. 765; *Adirondack Securities Corp.*, 23 B.T.A. 61; *Northeastern Surety Co.*, 29 B.T.A. 297; *Donander Co.*, 29 B.T.A. 312; *Oil Shares, Inc.*, 29 B.T.A. 664; *C E. Wilson*, 29 B.T.A. 1022; *Estate of Harry E. R. Hall*, 29 B.T.A. 1255.