KAUFMANN DEPARTMENT STORES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9724. Promulgated May 2, 1928.

*C. E. Koss, Esq., J. C. Peacock, Esq.,* and *John W. Townsend, Esq.,* for the petitioner.

*C. H. Curl, Esq.,* for the respondent.

## OPINION.

MURDOCK: The petitioner claims the right to deduct as ordinary and necessary expenses the amounts of $30,194.50 and $19,652.00 for 1920 and 1921, respectively, representing 2 per cent of the amount by which its total net income of the period beginning with the date of the contract and ending December 31, 1920, calculated on the December 31, 1916, basis, exceeded $4,500,000 and 2 per cent of the amount of its net income for 1921, figured on the same basis. It contends that these amounts were incurred expenses and proper deductions for the respective years since it kept its books and made its returns on the accrual basis.

One of the early cases decided by this Board, and frequently cited, is that of *William J. Ostheimer*, 1 B. T. A. 18, in which a lessee claimed the right to deduct from yearly income the liability, which would arise upon the termination of its lease, to restore the leased property to the lessor in as good condition as when received. In denying such deductions we stated, in part, as follows:

\* \* \* Since the taxpayer kept his books on the accrual basis, all deductions allowable in determining his net income should be on that basis, including his contractual obligation under the terms of the lease. In order that an item may be accrued, however, a liability must actually be incurred in the taxable year. *Schuster & Co.* v. *Williams*, 283 Fed. 115. The statute recog-

nized the accrual basis of making returns by providing for the deduction of expenses *incurred* but not paid. It is apparent that no liability in praesenti was incurred under the terms of the lease in question in the years 1918 and 1919 however well known it might have been that a liability in some amount would be incurred at some time in the future. * * *

While it might have been sound business practice on the part of the taxpayer to set up a reserve out of his income to meet a *future* liability, such a reserve is not deductible in determining net income.

In the above case it was certain that the lessee would at some later period be compelled to pay out something as a result of its lease, while in the present case, as will be later demonstrated, it was not certain that the petitioner would ever be called upon to pay the amount claimed as a deduction, or any part thereof.

The petitioner contends that the decisions of the Supreme Court of the United States in *United States* v. *Anderson*, 269 U. S. 422, and *American National Co.* v. *United States*, 274 U. S. 99, are authority for the accrual of the amounts in question in this case. In the *Anderson* case the court said that the purpose of sections 12 (a) and 13 (d) of the Revenue Act of 1916 was

* * * to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period; * * *

It further stated that:

In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it.

It then held that events had occurred before the tax in that case became due which fixed the amount of it. The present case is affected only by the broad principles laid down in the *Anderson* case, since the facts in the two cases have almost nothing in common.

In the *American National Co.* case the Supreme Court quoted a considerable portion of the *Anderson* opinion, and held that the American National Co. was entitled to accrue in each year the total amount of certain bonuses to be paid later in connection with notes which it sold during the year. These bonuses were annual payments during each of five years of 1 per cent of the balance of each note remaining unpaid during each year. Although the notes might be reduced or paid off during the five-year period, nevertheless the company accrued the full amount which it might ultimately be required to pay. The company sold notes due in five years, and at the time the borrower executed the note he also gave the company another note due in two years, without interest, for 10 per cent of the loan as the company's commission or compensation for making and negotiating

the loan. From these commission notes the company derived its income and it reported as income during each year the total amount of the notes which it received during that year, and if later it did not have to pay all of the bonus which it had accrued it reported the unpaid portion as income. The court held that the method adopted by the company clearly reflected its income and allowed the accrual.

In the present case, at the ends of the two years in question, all of the events had not occurred which fixed the amount of the bonus and determined the liability of the petitioner to pay it. The method adopted by the petitioner does not clearly reflect its income and does not charge against income earned during the taxable periods the expenses incurred in and properly attributable to the process of earning income during those periods.

The bonus involved in this case was a percentage of all net profits for a five-year period over and above certain minimum amounts. The net profits of the first two years did not exceed the minimum amounts yet they formed a part of the final net profits and in this way affected the amount of the bonus. It would have been impossible for the petitioner to have determined the amount of the bonus before the end of the five-year period and it did not make any estimate in regard to the amount until the end of the third year. The total amounts which it attempted to accrue as expenses of earning income in the third and fourth year of the contract were no more properly attributable to the process of earning income during those periods than a portion thereof was attributable to the process of earning income during the preceding years. The petitioner does not contend that the bonus should be spread over the five-year period and has not made allegations to support such a method. Even if we knew sufficient facts regarding the income of these years and the total final net profits to enable us to spread the bonus over the five-year period, still we are not convinced that such a method could be adopted as one clearly reflecting income.

Also we think that the deductions claimed by the petitioner are not such as are authorized by the taxing statute. A consideration of all the provisions of the contract, the subject matter and the objects to be accomplished is necessary in order to find the true intent of the parties in regard to the considerations which Mundheim was to receive. *Phoenix Silk Mfg. Co. of Paterson, N. J.* v. *Reilly*, 187 Pa. 526; 41 Atl. 523. This is a five-year employment contract, the compensation of the employee being derived from three sources; first, an annual salary payable monthly; second, an annual amount in the nature of a bonus increasing each year and payable within 90 days after each annual inventory, in case the profits of the year exceeded a certain sum; and, third, with which source alone we are concerned in this proceeding, a certain percentage of

the amount by which the net profits for the entire term of the contract calculated on a certain basis, exceeded $4,500,000, not payable to Mundheim unless such final net profits calculated upon another basis exceeded $3,750,000, neither of which calculations could be made until the expiration of the contract period. The amount of the 2 per cent bonus was not calculated or paid until the expiration of the contract. If at any time before the expiration the net profits figured upon the 1916 basis, exceeded $5,000,000, and figured upon the 1917 basis, exceeded $3,750,000, nevertheless such excess might be wiped out later by losses, taxes, depreciation, or other reasonable adjustments incurred or made after such time and before the expiration of the contract. If the employee died or was unable to perform services for thirteen consecutive weeks during the existence of the contract it could be terminated at the option of the employer, and, in such event, the monthly salary received by the employee was to be considered "full consideration, compensation and satisfaction of all claims of the said Mundheim under this agreement." It also appears from the contract that Mundheim was employed by the petitioner because of his exceptional experience in the particular line of employment and his peculiar fitness for the position, and that a breach of the contract by Mundheim would entail upon the petitioner a financial loss which could not be adequately measured by the rules of law.

The petitioner's idea in employing Mundheim was apparently to acquire the services of an experienced and capable manager for its business, one capable of building the business up to a greater state of efficiency and a greater volume of sales with increased profits for the petitioner. This work in a business the size of the petitioner's was not estimated to be the work of a month or a year, but a task which could only be accomplished over a longer period of time. Therefore, a five-year contract was made providing for certain monthly compensation with a further bonus in case the petitioner's business should make a certain profit each year, and still a further provision that a bonus would be paid to Mundheim if net profits for the five-year period were in excess of certain amounts, and it is only reasonable to suppose upon consideration of the whole contract and the three sources of compensation that the last consideration recited was for the purpose of procuring Mundheim's best service for the entire period of the contract. In other words, this contract as to the 2 per cent bonus feature was an entire one and a full performance of it by Mundheim was a condition precedent to his right to claim such a bonus. *Phoenix Silk Mfg. Co. of Paterson, N. J.,* v. *Reilly, supra.* This construction is borne out by that part of the contract which provided that in the event of Mundheim's death during the contract period, or his inability to perform services for a

consecutive period of thirteen weeks, the petitioner might treat the contract as terminated and the salary already received as full consideration for the services performed up to that time. The 2 per cent bonus was not earned by Mundheim at any time before the expiration of the contract. It did not have to be set aside, withdrawn from use or paid until the five-year period was over. It was measured by "final net profit." Its amount could not be determined before the expiration of the contract and a liability for it under the contract did not accrue before that time.

The petitioner, however, also relies on the case of *Block & Kohner Mercantile Co.*, 4 B. T. A. 673, which, it contends, presents a state of facts similar to those in the present case, and is authority for allowing the deductions which the petitioner now claims. On the facts in the *Block & Kohner Mercantile Co.* case we allowed the deduction as an incurred expense on the ground that the one-third share of the profits of the company was at the end of the year in question definitely committed to Weinbach, subject only to be defeated by a subsequent net loss over which the taxpayer had no control. If Weinbach died, or if the contract was terminated before the expiration of the three-year period, he or his estate shared in the profits to the date of termination, while in the case at bar, as has been pointed out, the death of Mundheim during the contract period or the termination of the contract for any reason except his discharge without cause, defeated his right to receive the bonus in question or any part thereof, and even in the event that he was dismissed without just cause, he received by a special provision of the contract a certain amount as liquidated damages. In the *Block & Kohner* case the net profits at the end of any year could be determined and, since Weinbach was to get one-third of these, his share could be determined. In the present case Mundheim's percentage only applied to net profits over and above certain minimum amounts so that his share could not be accurately determined or even approximated until the termination of the contract. The contract in the *Block & Kohner* case was not necessarily an entire one, while as pointed out above the contract which we have in question was an entire one and Mundheim had no right of action for any part of the 2 per cent bonus until he had served the prescribed term of five years.

The *Block & Kohner* and *Anderson* cases are, we think, ones in which the right to compensation has already accrued or a liability to pay has been incurred, and only the enjoyment of the compensation is postponed or the amount to be paid is subject to be cut down or possibly wiped out by later events, whereas in the present case, after a careful consideration of the contract itself, we are of the opinion that neither the right to receive the compensation nor the

liability for its payment came into existence until the termination of the contract, and that in order to claim any part of the 2 per cent bonus the employee must first show that he has served the full term of the contract. It therefore follows that the Commissioner correctly disallowed deduction of a part of the 2 per cent bonus as an ordinary and necessary expense for 1920 and 1921.

*Judgment will be entered for the respondent.*