THE REUBEN H. DONNELLEY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36881.   Promulgated February 17, 1931.

*Richard E. Dwight, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

OPINION.

BLACK: Petitioner complains of two errors committed by the respondent. (1) The action of respondent in disallowing as a deduction, reserves of $12,931.18 for the year 1923 and $29,954.18 for the year 1924, set up on the books of the petitioner to pay commissions to salesmen on advertising contracts which they had secured for petitioner; (2) the action of the respondent in adding $86,814.20 to petitioner's income for 1923 by reducing petitioner's opening inventory for 1923 in that amount.

Section 212(b) of the Revenue Act of 1921, which was applicable to the return of the taxpayer for the year 1923, reads as follows:

The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; . * * *

Regulations 62, which were applicable to that return, contained the following provisions:

It is recognized that no uniform method of accounting can be prescribed for all taxpayers, and the law contemplates that each taxpayer shall adopt such forms and systems of accounting as are in his judgment best suited to his purpose. (Article 24.)

Approved standard methods of accounting will ordinarily be regarded as clearly reflecting income. . (Article 23.)

The Act provides two tests to which each inventory must conform: (1) It must conform as nearly as may be to the best accounting practice in the trade or business, and (2) it must clearly reflect the income. It follows, therefore, that inventory rules cannot be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. * * * An inventory that can be used under the best

accounting practice in a balance sheet showing the financial position of the taxpayer can, as a general rule, be regarded as clearly reflecting his income. (Article 1582.)

The 1924 Act and regulations thereunder are substantially the same as above.

During the taxable years petitioner kept its books on the accrual basis and undoubtedly would have the right to accrue on its books any expense liability which it had actually incurred but had not paid during the taxable year. Such expense liability to have been properly accrued, however, must have been one which was fixed and definite and not merely contingent. Any system of bookkeeping which accrues contingent liabilities as expense items does not correctly reflect income. *Crescent Cap Co.*, 10 B. T. A. 1; *Kaufmann Department Stores, Inc.*, 11 B. T. A. 949.

It is true, when petitioner published its directories, the amounts due it from customers on their advertising contracts were immediately charged to such customers' accounts and accrued as income on the books of the petitioner and went into its gross income for that year. It may be inquired why such items should be accrued as income and the amounts due salesmen as commissions on these advertising contracts should not be accrued as expense. We think the answer lies in the fact that the accounts for advertising were unconditionally due when the directories were published, whereas the amounts due salesmen for commissions were contingent upon the customers paying their accounts.

The uncontradicted evidence in this proceeding was to the effect that the commissions to be paid the salesmen for procuring advertising contracts were not due until the advertisers had actually paid the accounts. If the advertiser never paid for his advertising space, the salesman never got any commission on that particular contract. It is true the salesmen were given drawing accounts and were permitted to draw certain sums of money to meet their running expenses, prior to the collection of the accounts, but no salesman was credited any commission for having procured an advertising contract until that account was actually paid.

Petitioner cites *American National Co.* v. *United States*, 274 U. S. 99, in support of his contention. We do not think that case supports petitioner's contention. In that case, as stated by the Court, " The company consistently kept its books of accounts from year to year on an accrual basis. Under the practice followed from the inception of its bonus method of doing business, whenever a loan note was sold it charged on its books, as an expense incurred in the sale, the aggregate amount of the payments called for in the bonus contract, computed at one per cent per annum to the maturity of the note

and credited the investor on its books with a like amount, in a subsidiary bills-payable ledger. The total amount of this liability on the bonus contracts was carried on its general ledger under a control account called the Guarantee Fund Account."

In the instant case the petitioner did not charge on its books as an expense incurred, the unpaid commissions to these salesmen, nor did it credit to the accounts of such salesmen the commissions on contracts for which payment had not yet been made. On the contrary, it was distinctly understood that no salesman was entitled to a credit to his commission account for any particular contract until payment had been made in settlement of that contract. What petitioner did was to set up a reserve on its books to take care of these contingent liabilities when and if they matured by the customers paying their accounts, and it contends for the right to deduct these reserves from its gross income in the taxable years. We have held in numerous cases that such reserves are not deductible. *William J. Ostheimer*, 1 B. T. A. 18; *Uvalde Co.*, 1 B. T. A. 932; *H. V. Green Co.*, 5 B. T. A. 442; *Horn & Hardart Baking Co.*, 19 B. T. A. 704. A deduction may not be accrued if it is wholly uncertain whether, at the end of the year, the amount will ever have to be paid or if the amount is contingent upon later events. *Lucas* v. *American Code Co.*, 280 U. S. 445.

The action of the respondent in disallowing these reserves as deductions is approved.

We will next discuss petitioner's second assignment of error. In this assignment, petitioner complains because respondent has reduced its opening inventory for 1923 in the amount of $86,814.20 and has made no corresponding adjustment in the closing inventory of 1923, thereby adding that much to its income. Petitioner had the right to change its method of bookkeeping, so long as the method adopted correctly reflects income. In November, 1923, petitioner sought permission from the Commissioner to change its method of bookkeeping, but the Commissioner informed petitioner that the contemplated change was not such a one as to require permission from his office. The Commissioner however, in the same letter cautioned petitioner that any such changed method must correctly reflect income and that if it did not, it would not be recognized by the Commissioner's office. The Commissioner on audit of petitioner's tax returns for the years in question has determined that petitioner's books did not correctly reflect income for those years and has asserted certain deficiencies against petitioner, which we have already enumerated. The burden of proof is on petitioner to show that this determination of the Commissioner is wrong. Has it met this burden of proof? We think it has.

The taxpayer's business was not such a business as could be satisfactorily shown by the accounting methods appropriate for taxpayers dealing in merchandise. The "work in process" method of accounting adopted by the taxpayer seems to be the method best suited to this purpose in a business in which its income was derived from contracts, which it performed by publishing and distributing directories. In each year there was "work in process" on these directories and the change in the taxpayer's accounting method was designed to conform the taxpayer's annual accounts to this work in process.

The work in process method required that the inventories of the taxpayer include all charges against the publications in process, including the items of overhead in question. Therefore these items had to be included in the closing inventory. But to include them in the closing inventory only would clearly distort income, for it would increase income by the amount of the items added. The items would become income rather than a deduction, as the taxpayer was entitled to treat them, under its old system of bookkeeping.

The correct thing to do, it seems to us, was what the taxpayer did, namely, set up a new opening inventory for the year 1923 on the new basis by including therein corresponding items of overhead carried over from the preceding year.

This did not distort income. Income would be affected only to the extent of the change of these items of overhead from year to year. The result upon income would be substantially the same as if the taxpayer had continued the previous method of taking deductions for these overhead items. Therefore the exclusion of the items from the opening inventory alone, as is proposed by the Commissioner, would necessarily greatly distort income.

It seems to us clear that if the Commissioner is to be permitted to exclude from petitioner's opening inventory for 1923 the amount of $86,814.20, representing certain overhead items, he would be required to exclude from the closing inventory of 1923 items of the same nature, and to do this would leave petitioner's income substantially the same as shown on its original return for 1923 but would have the effect of throwing it back to its old method of bookkeeping—part cash and part accrual. Petitioner has the right to change its method of bookkeeping so long as such change correctly reflects income. Any system of bookkeeping which does not give consistent treatment to both opening and closing inventories of the taxable year will not correctly reflect income.

In *Justus & Parker Co.*, 13 B. T. A. 127, we said:

At the hearing it was stated by counsel for the petitioner, and not denied, that the respondent adjusted the 1920 closing inventory and did not make a corresponding adjustment of the 1920 opening inventory, and that had the opening

inventory been correspondingly adjusted no increase in net income would have resulted. We have held in a number of cases that the adjustment of the closing inventory by the respondent, without a corresponding adjustment of the opening inventory, was improper and resulted in a distortion of income, which could not be approved. (*Thomas Shoe Co.*, 1 B. T. A. 124; *Sinsheimer Bros., Inc.*, 5 B. T. A. 918; *Boyne City Lumber Co., supra.*)

Respondent's action in adjusting petitioner's opening inventory for 1923 by decreasing same $86,814.20 and making no corresponding adjustment to petitioner's closing inventory for 1923, thus adding $86,814.20 to petitioner's income for 1923, was error and petitioner's assignment of error with respect thereto is sustained.

*Decision will be entered under Rule 50.*