### AIR–WAY ELECTRIC APPLIANCE CORPORATION v. GUITTEAU, Former Collector of Internal Revenue.

### No. 4143.

District Court, N. D. Ohio, W. D.
Aug. 17, 1939.

Welles, Kelsey & Cobourn, of Toledo, Ohio, for plaintiff.

E. B. Freed, U. S. Atty., of Cleveland, Ohio, and Robert H. Jackson, Andrew Sharpe, and S. E. Blackham, Assts. to Atty. Gen., for defendant.

KLOEB, District Judge.

Three questions are raised involving four claims for refund of taxes paid.

Question number one is eliminated through paragraph seven of the stipulation made between the parties wherein it is agreed that Plaintiff is entitled to recover the tax paid on $220.16, to-wit: $29.72. Judgment is awarded Plaintiff therefore for the sum of $29.72 overpayment of tax for the year 1927.

■ Question number two involves the method of dealing between Plaintiff and its "Distributors" in furniture and fixtures supplied for the Distributors during the year 1928.

It appears that the Plaintiff entered into agreements with its district Distributors (Exhibit B) wherein it is provided that Plaintiff should supply and equip the offices of the Distributors with furniture and fixtures. Upon doing so Plaintiff charged the account of the Distributor involved the sum of 5% per month of the sale price of the furniture and fixtures credited to him. This charge was made under a "gentlemen's agreement". It is the claim of the Government that by doing so Plaintiff in effect was charging as a depreciation on furniture and fixtures 5% per month, whereas the maximum depreciation allowable on furniture and fixtures is 10% per annum. It is the contention of the Defendant that there were no bona fide sales of furniture and fixtures to the Distributor, and that when it increased the Plaintiff's net income for the year 1928 by adding thereto the sum of $47,681.82, that it restored to income for that year an excess charge for depreciation.

After a careful study of Exhibit B, I am of the opinion that the latter contention is correct; that no actual sale of furniture and fixtures took place between the Plaintiff and the Distributors involved; that no title to the furniture and fixtures ever passed to the Distributors, and that it was the clear intent of the drafter of the agreement that title to the furniture and fixtures should never actually pass from the Plaintiff; that this is clearly indicated in the provision in the agreement whereby, upon discontinuing his contractual relations with the Plaintiff, the Distributor was not entitled to remove the furniture and fixtures, which he supposedly had purchased, but was credited by Plaintiff to his account the sum of 25% of the amount previously "paid" by him at the rate of 5% per month; that the allowance by the Government of 10% per annum for depreciation and the restoration by the Government of the sum of $47,681.82 to net income for the year 1928 was correct, and that Plaintiff has no cause for complaint therefore.

Question number three involves the restoration by the Government to Plaintiff's net income for the year 1927 of the sum of $112,183.38, and for the year 1928 the sum of $138,494.40. One question is involved here, and that is whether these two sums which Plaintiff had charged to expenses for those respective years, and had credited to a "Reserve For Contingent Collection" account, were actually expenses incurred during the taxable year in question.

It appears that under the agreements had between Plaintiff and its Distributors, these Distributors, through their Dealers, who were actually door to door solicitors, sold many Air-Way units on the installment plan. When a unit was sold the installment contract was immediately assigned by the Distributor to Plaintiff, and Plaintiff thereupon credited gross income. Out of the sum total involved in each unit for which the installment contract was taken, the Dealer, or in event that his services had been terminated, the Distributor, was entitled to 10% as his additional commission as the installments were paid. Plaintiff followed a system whereby it immediately charged "Expenses" with the 10% and credited a fund designated "Reserve For Contingent Collections". Immediately the installment was paid the Distributor was paid, the Distributor was credited with the additional commission, and the reserve fund was . charged with the sum so paid. Taking this reserve fund on January 1, 1927, and deducting this sum from the amount in the reserve fund as of the close of business, December 31, 1937, we find that the reserve fund had increased for that year in the sum of $112,183.38, and that pursuing a like process for the year 1928, that this fund had increased $138,-494.40. The Government deducted from the "Reserve For Contingent Collection" account these two sums for the years 1927 and 1928, and included these sums in Plaintiff's taxable net income for those respective years.

It is the contention of the Plaintiff that these sums represent obligations actually incurred during those years, and that therefore it quite properly charged these sums as expenses.

Let us examine the statutes involved.

Section 234 of the Revenue Act of 1926, 44 Stat. 41, provides in part as follows:

"(a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

Section 23 of the Revenue Act of 1928, 26 U.S.C.A. § 23 provides in part as follows:

"In computing net income there shall be allowed as deductions:

"(a) *Expenses.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

Were the items involved expenses "paid or incurred" during the respective years?

I am of the opinion that they were not.

"A deduction may not be accrued if it is wholly uncertain whether, at the end of the year, the amount will ever have to be paid or if the amount is contingent upon later events." Reuben H. Donnelley Corporation v. Commissioner, 22 B.T.A., 175.

"In each of these cases it was held that the loss could be claimed only in that year in which it was in fact "sustained"; that· is, in which the obligation to pay or charge upon its books became definitely fixed. As to both income and deductions it is the fixation of the rights of the parties that is controlling." Commissioner v. R. J. Darnell, Inc., 6 Cir., 60 F.2d 82, 84.

It appears to me that the rule is most succinctly stated in the case of Columbus Plate & Window Glass Co. v. Miller, 38 F.2d 509, 510, which is a decision of the District Court for the Southern District of Ohio, wherein it says: "The right to the deduction only obtains after the liability has been fixed, and during the year in which it so becomes fixed, and not in a year in which it is prospective, speculative, or contingent.

By charging expenses and crediting this reserve account with these commissions immediately upon receipt of the installment contract the Plaintiff was proceeding on the theory that the item of expense known as commissions was immediately incurred. An examination of the agreement had between Plaintiff and its Distributors and a study of its method of dealing with these Distributors, convinces me that these various items were prospective or contingent, and therefore not properly charged to expenses for the years involved. At the time of the assignment of the conditional sales contracts to Plaintiff, I can find no presently existing and enforceable obligation to pay these commissions to the Distributors or Dealers. The obligation arose when the installment was actually paid to the Plaintiff.

I therefore find that there was included in Plaintiff's "Reserve For Contingent Collection" account for the years 1927 and 1928 the sums of $112,183.38 and $138,494.-40, respectively, in excess of any liability

incurred or paid by the Plaintiff during those respective years.

The motion of Defendant for judgment is sustained.

Findings of fact and conclusions of law may be drawn and submitted accordingly.