*911 OPINION.
Black:
Two issues remain for our decision: (1) Whether the respondent erred in increasing petitioner’s income by the excess of the selling price over the net price on all sales made by petitioner’s agents during the taxable years and allowing petitioner as a deduction therefrom only the sales agents’ commissions actually paid during the year, thereby disallowing as a deduction during the respective current taxable year that part of the agents’ commissions which remained unpaid at the end of the year; and (2) whether petitioner is entitled to a credit under section 26 (c) (1) of the Revenue Act of 1936 by reason of a contract restricting the payment of dividends.
1. The facts relative to the first issue are fully set forth in our findings. Briefly, petitioner sold its product chiefly through agents to whom petitioner quoted a “net price” and permitted the agents to establish the “selling price” with the understanding that the excess of the selling price over the net price was to be paid to the agents as their commissions. In no case was petitioner entitled to keep for itself more than the net price. It was agreed by petitioner and its selling agents that the purchaser would pay petitioner the entire selling price; that the difference between the selling price and the net price would represent the agent’s total commission; that 25 percent of this commission would be credited to a regular reserve account and not paid to the agent until the entire selling price had been paid to petitioner; that 75 percent of this total commission, called the current commission, would be paid to the agent immediately, provided the down payment made by the purchaser equaled 75 percent of the total commission; that in case the down payment did not equal 75 percent of the total commission, the entire down payment was to be paid to the agent and the balance of the current commission would be credited to a special reserve account and paid to the agent on the basis of 50 percent of the monthly collections from the purchaser until the current commission was fully paid. Petitioner accrued and reported as income only the net price. It claimed no deductions for commissions. The respondent determined that petitioner should accrue and report as gross income the entire selling price and then deduct from the selling price only the commissions actually “paid” to the agents during the taxable year. Al *912 though petitioner kept its books and reported according to the accrual method of accounting as distinguished from the cash receipts and disbursements method, the respondent determined and contends that the portion of the agents’ commissions contained in the regular and special reserve accounts did not accrue as a liability for the reason that the payment of these amounts to the agents was contingent upon collection being made by petitioner from the purchasers. In support of this contention the respondent cites Reuben H. Donnelley Corporation, 22 B. T. A. 175, as a case on all fours with the present case; and Air-Way Electric Appliance Corporation v. Guitteau, 29 Fed. Supp. 379.
Petitioner contends that it should either be sustained in accruing as income only the net price and not deducting therefrom any agents’ commissions, or, if required to accrue as gross income the selling price, then it should be permitted to deduct the entire amounts of the agents’ selling commissions whether collected in the taxable year or not; and that, to the extent the respondent’s argument finds support in the Donnelley case and the Air-Way Electric Appliance Corporation case, those decisions are unsound and should not be followed by the Board in the instant case.
Since the briefs in the present proceedings were filed the Sixth Circuit has reversed the District Court in Air-Way Electric Appliance Corporation v. Guitteau, supra. See 123 Fed. (2d) 20. In that case the taxpayer was a manufacturer of vacuum cleaners. Its marketing system consisted of the appointment of distributors who in turn entered into arrangements with retail dealers who sold to the public generally on installment conditional sales contracts which were assigned by the dealer to the distributor and by the distributor to the taxpayer. The taxpayer charged the distributor for merchandise delivered to him. Upon assignment of the sales contracts to the taxpayer, the latter would credit the distributor with the face amount of the contract and debit accounts receivable for the same amount. At the same time the taxpayer would charge the distributor’s current account with 10 percent of the face of the contract and credit the distributor’s deferred account which was captioned “Reserve for Contingent Collection Expense” with a like amount. The deferred credits were payable to the distributor from month to month as the installments were paid by the purchaser of the vacuum cleaner. As the deferred credits were paid to a distributor, the amounts so paid were charged to the reserve for contingent collection expense account. During the taxable years involved, the credits to this reserve exceeded the debits by $112,183.38 in 1927 and $138,494.40 in 1928. The Commissioner included in the taxpayer’s gross income the face value of the conditional sales contracts but refused to allow as deductions *913 the amounts of $112,183.38 and $138,494.40, respectively, on the ground that such amounts were not properly chargeable to expense during the tax years because prospective. The District Court sustained the Commissioner, citing as authority the Donnelley case. The Sixth Circuit in reversing the District Court, among other things, said:
The Collector relies upon the rule that reserves are not deductible if they are set up merely to cover contingent liabilities. [Citations] If the obligation to pay is, in a true sense, based upon a contingency in the sense that that term is used in the cited cases, the judgment should stand. But analysis discloses that it is not. True, the purchasers might never pay up their contracts and be uncollectible, but upon the installments being paid the obligation to' pay them over to the distributor is absolute and not contingent and the obligation accrued when the right to collect accrued during the tax years. In this respect that portion of the installment contracts represented by the 10% reserve stands on no different basis than that portion represented by the 90% net credit, for both are subject to the possibility that the purchaser might default, and to defer the liability to pay with respect to the one until the money is received, and to credit the other in advance of payment as accrued, is to divide the transaction and to place part of it upon an accrual basis and part of it on a cash basis, and this does not reflect true income. * * *
"We think the Sixth Circuit correctly decided in favor of the taxpayer in the Air-Way Electric Appliance Corporation case, and that the same reasoning used by the court in that case is applicable to the instant case and brings about a decision in petitioner’s favor.
It seems clear to us that when petitioner made sales of its equipment through its agents to customers and received their installment notes secured by the retention of title to the equipment, it should accrue the entire sales price as gross income. Cf. George Hyatt, 36 B. T. A. 121. There were no conditions as to payments which would make these notes in any sense contingent assets. True, some of them might never be paid, but that fact has nothing to do with their accrual as income unless they were of the class that their collection was so improbable as to make their accrual as income unnecessary under a well known line of Board and court decisions. But there is no evidence in the instant case that any of the notes and accounts were of that nature and there is no such contention.
It seems equally clear that petitioner should have the right to accrue against the above mentioned income items its liability to pay* the agents’ commissions thereon. The contract which petitioner had with its agents definitely provided that the company would pay the agent as his selling commission “the difference between the selling price and the Company’s net price.” True, it is that certain portions of this commission were not to be paid to the agent until collections were made from the customers but the liability to pay these commissions was just as certain as payment of the notes was certain, no more and no less. If payment of these notes receivable was suffi *914 ciently certain to justify their accrual as gross income, and we have held it was, we think the obligation of petitioner to pay agents’ commissions was sufficiently certain to justify their accrual as liabilities.
To treat petitioner’s income and deductions in the manner we have just suggested is simply to treat both sides of the ledger in the same way. Cf. American National Co. v. United States, 274 U. S. 99; Bonded Mortgage Co. v. Commissioner, 70 Fed. (2d) 341.
The fact that some of the commissions which petitioner definitely agreed to pay its agents were not payable until the notes which had been given for the equipment had been paid in full did not change the liability of petitioner into a contingent liability. Cf. Shoemaker-Nash, Inc., 41 B. T. A. 417. See also G. C. M. 9571, X-2 C. B. 153.
We think Reuben H. Donnelley Corporation, supra, upon which respondent so strongly relies, is distinguishable on its facts. In that case we found, among other things, that “The contracts for advertising or extra listings were obtained by soliciting agents or salesmen who were paid on a commmission basis against which they had drawing acccounts. This commission was not payable until the charge for the advertising was collected from the customer.” On those facts we held that no liability to pay agent’s commissions accrued until the taxpayer collected the accounts from its customers. In so holding we said: “In the instant case the petitioner did not charge on its books as an expense incurred, the unpaid commmissions to these salesmen nor did it credit to the accounts of such salesmen the commissions on contracts for which payment had not been made. On the contrary it was distinctly understood that no salesman was entitled to a credit to his commission account for any particular contract until payment had been made in settlement of that contract!"[1] (Italics supplied.)
For reasons which we have already pointed out herein, we think the contract which petitioner had with its sales agents was one under which, by its very terms, commissions accrued to the sales agents immediately when sales were made, although only a part of the commissions was then payable and the balance was to be paid later when collections were made. These facts, we think, make the instant case distinguishable from the Reuben H. Donnelley Corporation case.
We also think that Swain & Myers, Inc., 42 B. T. A. 306, is distinguishable on its facts. In that case the sales tax levied by the State of Illinois was not on gross sales, but upon “gross receipts from sales,” as we pointed out. In other words if a merchant sold his goods on a credit, no tax accrued against him until collections were made. This latter event had to occur before there was any accrual of the tax. Under those circumstances we held that the taxpayer in that case was not entitled to accrue as a liability in the *915 taxable year $1,497.61 taxes as due tbe State of Illinois, based on sales which the taxpayer had completed but upon which no collections had been made in the taxable year. We see no conflict in our holding in the Swain & Myers, Inc., case with our holding in the instant case.
2. In determining petitioner’s “undistributed net income” as that term is defined in section 14 (a) (2) of the Revenue Act of 1936, is petitioner entitled for the fiscal years ending September 30, 1937, and September 30, 1938, respectively, to a credit under section 26 (c) (1) of the same act, relating to contracts restricting dividends ? The material provisions of this section are in the margin.[1]
Petitioner contends that it could not during the fiscal years involved distribute any amount as dividends without violating section 13 of article V of the trust indenture executed by petitioner on March 1, 1928. The material provisions of section 13 are as follows:
The Company covenants and agrees that it will not pay any dividends on its outstanding capital stock * * * unless its current assets will equal at least twice the amount of its current liabilities, after the payment of any dividends * * *.
Section 14 of article V of the trust indenture defines the terms “current assets” and “current liabilities,” the definition of the latter term being as follows: “Accounts payable; trade acceptances; bills current and notes current, and any other liabilities other than these bonds.” (Italics supplied.)
Petitioner contends that the amounts embodied in the stipulation as representing the amounts at the close of each month during the fiscal years involved remaining outstanding and unpaid by the maker of the deferred payment paper sold by petitioner and the New York corporation to C. I. T. and by the Beaumont company to C. I.. T. Corporation, respectively, represent “contingent liabilities” of petitioner and as such must be considered as “any other liabilities” in applying the definition of “current liabilities” as used in the trust indenture.
The respondent contends that the phrase “and any other liabilities other than these bonds” contained in the definition of “current liabilities” as defined in the trust indenture “must be read in porn materi.a with the section from which it is clear that the current assets and current liabilities therein referred to are fixed, known, or asc-er- *916 tamable current assets and liabilities — not contingent current assets and liabilities.” The respondent further contends that “under the ejusdem generis rule, it is obvious that this phrase is intended to refer to any other cwrrent liabilities other than these bonds which are fixed current liabilities.” The respondent further- contends that in any event the amounts remaining outstanding and unpaid on paper sold by the Beaumont company should be excluded as a current liability for the reason that as to such paper petitioner was merely an accommodation endorser in violation of its charter and the corporation laws of the State of Georgia. The remaining contentions of the respondent relate to certain other minor objections to the list of current assets and current liabilities introduced in evidence as petitioner’s Exhibit 15 referred to in our findings.
At the outset it should be noted that petitioner has overstated the amount of its alleged contingent liability at the close of each month during the fiscal years involved by the 10 percent holdback, which is the amount that would be paid to petitioner (including the New York corporation) or the Beaumont company upon payment in full of the discounted paper by the maker thereof. Petitioner was not liable to C. I. T. for the 10 percent holdback, contingently or otherwise. Petitioner (including the New York corporation) and the Beaumont company, respectively, merely agreed that, if there should be default, “we agree on request without any tender of paper being required to repurchase from you the paper or the entire series of paper on which such default has occurred at the remaining amount of your investment therein.”
Are these remaining amounts, exclusive of the 10 percent holdback, “current liabilities” as that term is used in the trust indenture? Before answering this question we think that the respondent is in error in contending that in any event the remaining investment of the C. I. T. Corporation in paper sold by the Beaumont company should be excluded as an alleged contingent liability of petitioner. We hold that the contract dated June 8, 1935, between petitioner and C. I. T. (set out in our findings) was not a violation of petitioner’s charter or the corporation laws of the State of Georgia. We will now consider the preceding question.- •
In approaching the question it might be well to bear in mind that accounting authorities generally classify liabilities that appear in the balance sheet proper as. either fixed or current; that although arbitrary if is customary to regard liabilities as fixed if more than one year intervenes before they fall due; that bonded indebtedness is generally regarded as a fixed liability as distinguished from current ; and that contingent liabilities “are those which become definite liabilities in. the future only in. case of occurrences, which may or may *917 not transpire, as, contingent liability on notes receivable discounted, and on securities of other companies guaranteed as to principal or interest, or both.” Accountants’ Handbook, by E. A. Saliers, pp. 337, 338. From an accounting standpoint, it has been said, there are four methods of showing contingent liabilities on the balance sheet. These are set out in the margin.[2] Of course, the parties to the trust indenture could define “current liabilities” in any manner that they chose. They could even have agreed that no dividends whatever would be declared or paid while any of the bonds were outstanding. But it was their intention to permit dividends whenever the “current assets” exceeded twice the “current liabilities” and they defined the latter term as meaning: “Accounts payable; trade acceptances; bills current and notes current, and any other liabilities other than these bonds.”
If we were to construe the broad term “liabilities” as used in the above definition alone and apart from the remainder of the definition, it is our opinion that the so-called remaining amounts of “Investment” would have to be considered as coming within the broad term. First National Bank of Redlands v. Consolidated Lumber Co., 16 Cal. App. 267; 116 Pac. 680. Cf. Cochran and Sayre v. United States, 157 U. S. 286, 295, 296. But we think the term must be restricted in accordance with the rule of ejusdem gen&ris. 25 R. C. L. 997 states this rule in part as follows:
* * * In accordance with the rule of ejusdem generis, such terms as “other,” “other thing,” “others,” or “any other,” when preceded by a specific enumeration, are commonly given a restricted meaning, and limited to articles of the same nature as those previously described.
Under this rule the general words “any other liabilities” must be assimilated to the particular words “Accounts payable; trade acceptances ; bills current and notes current” and restricted to liabilities of the same kind. Cf. Helvering v. Stockholms Enskilda Bank, 293 U. S. 84. We have not overlooked the fact that the general words “any other liabilities” are qualified by the exception “other than these *918 bonds.” By reason of this exception it might be argued upon behalf of petitioner that the parties to the trust indenture attached to the general words a larger meaning than they would have if limited to things ejusdem generis as those specifically enumerated. But when it is remembered that the parties to the trust indenture were defining a term which had already come to have a generally understood meaning, it is believed that the phrase “other than these bonds” had been introduced only for greater caution. Otherwise, the particular words “Accounts payable; trade acceptances; bills current and notes current” would all be superfluous and it would have been sufficient to have defined “current liabilities” simply as “all liabilities other than these bonds.”
After a careful consideration of all the facts and argument of the parties, we are of the opinion that the contingent liabilities in question are not “current liabilities” as that term is used in the trust indenture, and we have made our finding accordingly.
Among the current assets listed in petitioner’s Exhibit 15 were “Notes Receivable — Net (Less Deferred Crs.).” The deferred credits thus deducted consisted of finance charges not yet earned on notes which matured in future tax years and also the 10 percent held back by C. I. T. on notes purchased by C. I. T., and amounted to $47,521.27 ($21,297.24 of which represented the 10 percent holdback) for each month during the 12-month period ending August 31, 1937, and $65,461.80 ($64,196.06 of which represented the 10 percent holdback) for each month during the 12-month period ending August 31, 1938. The respondent contends that these amounts should be added to petitioner’s current assets. Petitioner admits that these charges have been included in the face of the notes receivable. The trust indenture defines current assets in part as meaning “(d) Bills receivable after proper deduction for doubtful bills.” Since the amounts representing the 10 percent holdback concerned notes which petitioner had sold to O. I. T., we do not think those amounts should be considered as a part of petitioner’s “current assets” as that term is defined in the trust indenture. The balance of the said amounts of $47,521.27 and $65,461.80, respectively, represented charges on notes which apparently were still held by petitioner. We hold that these charges in the amounts of $26,224.03 and $1,265.74, respectively, being a part of the bills receivable, come within the definition and should be included in petitioner’s current assets.
In our findings we.have found the total current assets and the total current liabilities at the close of every month for the fiscal years ending September 30, 1937, and September 30, 1938. At the close of each month for the first eleven months of the fiscal year ending September 30, 1937, and at the close of each month for the first *919 eleven months of the fiscal year ending September 30, 1938, petitioner could have paid dividends in excess of its adjusted net income for the respective fiscal year without violating a provision of a written contract executed by petitioner prior to May 1,1936.
Article 26-2 of Eegulations 94 provides in part as follows:
(b) Prohibition on payment of dividends. — The credit provided in section 26 (c) (1) is allowable only with respect to a written contract executed by the corporation prior to May 1, 1936, which expressly deals with the payment of dividends and operates as a legal restriction upon the corporation as to the amounts which it can distribute within the taxable year as dividends. If an amount can be distributed within the taxable year as a dividend—
*******
(2) at one time (as, for example, during the last half of the taxable year) without violating the provisions of a contract, but can not be distributed as a dividend at another time within the taxable year (as, for example, during the first half of the taxable year) without violating such provision—
then the amount is one which, under section 26 (c) (1), can be distributed within the taxable year as a dividend without violating such provisions.
We hold that the above regulations are reasonable and correctly interpret the statute. Cf. Honokaa Sugar Co., 43 B. T. A. 151, 157; Henry Mill & Timber Co., 43 B. T. A. 1073, 1077. The statute (see footnote 1) allows a credit of an amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed “within the taxable year” as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936. Since petitioner could have distributed amounts in excess of its adjusted net income for each fiscal year at the close of any month during the first eleven months of each fiscal year without violating a provision of the trust indenture, we hold that it is not entitled to any credit under section 26 (c) (1) of the Eevenue Act of 1936. The respondent’s determination as to this issue is sustained.
Reviewed by the Board.

Decisions will he entered wider Rule 50.

 SEC. 26. CREDITS OF CORPORATIONS.
In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—
■* ' # * *. .* *
(c) CONTRACTS RESTRICTING PAYMENT OB’ DIVIDENDS.-
(1) Prohibition on Payment of Dividends. — An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating , a provision of a written contract executed by the corporation" prior to May 1; 1936, which provision expressly d"eals“witli the payment of dividends. * * »

 Contingent Liabilities. — From an accounting standpoint there are four different ways of showing contingent liabilities on the balance sheet. Method one, which is the best where practical, is to show the contingent liability as a contra item to the corresponding contingent asset. For instance, when notes receivable are discounted, a corresponding amount of cash (less discount) is received. Instead of omitting mention of the notes receivable, they should be retained upon the balance sheet as a contra item to notes receivable discounted upon the liability side, both amounts affecting the balance. A second method is to show gross amount of the notes receivable and deduct from them the amounts which have been discounted, showing the net amount on the assets side of the balance sheet. A third method is to omit mention of the notes receivable which have been discounted but to indicate the notes receivable discounted as a contingent liability on the liability side, and write the amount short to indicate that they have not been included in the total. A fourth method, probably the simplest and most useful of all, is to asterisk the notes receivable and call attention in a footnote that a certain proportion of notes receivable (stating the exact amount) have been discounted. Auditing Theory and Practice, Montgomery, Vol. 1, p. 371.