Carmichael Tile Company v. Commissioner.
Carmichael Tile Co. v. Commissioner
Docket No. 22858.
United States Tax Court
1950 Tax Ct. Memo LEXIS 210; 9 T.C.M. (CCH) 351; T.C.M. (RIA) 50106; April 21, 1950
Herman Heyman, Esq., for the petitioner. Edward L. Potter, Esq., for the respondent. LEMIRE Memorandum Findings *211 of Fact and Opinion This proceeding involves deficiencies in federal taxes and penalties for 1945 as follows: 5%
negligence
5% delinquency
Kind of tax
Deficiency
penalty
penalty
Income
$2,713.64
$135.68
$ 678.41
Declared value excess-profits
2,785.35
139.27
696.34
Excess profits
7,818.93
390.95
1,954.73 The deficiencies in taxes arise from respondent's determination, as stated in his deficiency notice, that: "In the absence of adequate records your business income has been determined on the following basis: Gross income
$90,648.70
Allowable charges against income
68,297.53
Corrected business income
22,351.17
Business income reported
none
Adjustment
$22,351.17" Respondent also determined that the petitioner failed to file returns for 1945 in the manner and within the time prescribed by law and is liable to a penalty of 25 per cent of the tax, in accordance with the provisions of section 291(a), Internal Revenue Code. Respondent has also asserted a penalty of 5 per cent of the tax for 1945 on the ground that the deficiency is due to negligence or intentional disregard of rules and regulations *212 within the meaning of section 293(a), Internal Revenue Code. Findings of Fact The petitioner is a Georgia corporation, with its principal place of business in Atlanta, Georgia. It was incorporated in 1928 and was authorized to issue capital stock, but there is no evidence that any stock was ever issued. Petitioner's incorporators were J. F. and D. L. Carmichael, who had formerly operated the business as a partnership under the name of Carmichael Tile Company. After 1928 the petitioner did business as a corporation and filed its federal tax returns as a corporation. It also extended its business, after incorporation, by opening branches in Birmingham, Alabama, and Jackson, Mississippi. The petitioner's business was and is that of selling and installing tile and mantels and similar materials. Petitioner bought its materials from manufacturers of tile and similar products and contracted to sell and install tile at prices which would pay for the cost of materials used and labor and return a gross profit of 25 per cent to 35 per cent of the contract price to petitioner. During the 1920's and until early in the 1930's, petitioner's business flourished. Its records *213 were well maintained by a trained staff, and an elaborate perpetual inventory of tiles and other materials on hand was maintained. In the early 1930's, as a result of the economic depression of that period, petitioner's business declined sharply from annual gross sales of about $200,000 to about $30,000. Most of petitioner's employees were dismissed and the records maintained for the business were to a large extent discontinued. Those records which were maintained after 1933 were poorly kept by inexperienced personnel. The last physical inventory taken of tiles and other materials in petitioner's warehouse was some time in 1933. No physical inventory was taken after that time until the latter part of 1946. In January 1933 petitioner's actual physical inventory, valued at cost, was $16,914.35. The Birmingham branch of petitioner's business was closed in 1934 at a substantial loss to petitioner. At that time the tile on hand in Birmingham was divided between petitioner and the former manager of the Birmingham branch. Petitioner's share was shipped to its warehouse in Atlanta. Petitioner inventoried its share of the tile in 1934 at $6,630.61, which was the estimated market value of *214 the tile at that time and was substantially less than cost. A small amount of tile was received at about this time from Jackson, Mississippi, when that branch of petitioner's business was closed. This shipment of tile was not inventoried by petitioner but its value was estimated to be between $500 and $1,000. An undetermined amount of tile which had been left with petitioner on consignment in 1933 or 1934, by the American Encaustic Tile Company, was turned over to petitioner when that company went out of business in 1935 under an agreement that petitioner would pay $2,250 in cash for it. The petitioner actually paid $1,276 for the tile later but no further amount was ever paid. The stock of tile which petitioner had in its warehouse included some quantities of standard items but was substantially made up of tiles of old styles, out-of-date colors, and mixed patterns. Although the tile had been expensive to purchase, it was difficult to sell and only insignificant amounts of it were used from time to time until 1946, when virtually all of it was sold during a time when tile was difficult to obtain in sufficient quantities to supply demand. From about 1935 to 1946 the tile remained *215 in the warehouse, where it was stored in old barrels and boxes without unpacking and without any attempt being made to inventory it. Petitioner bought new tile to fill new orders as it was needed. In 1939 petitioner employed a bookkeeper who established a system of recording purchases of tile and other materials and of charging the tile used in current jobs against purchases. These records showed a book inventory of tile at the beginning of 1945 of $3,749.64, but no account was taken of the old tile remaining in the warehouse although it had never been charged off from inventory for any purpose. These records were maintained continuously through 1945, the taxable year here involved. However, petitioner took no physical inventory until the latter part of 1946. Petitioner determined its opening inventory for 1946 and its closing inventory for 1945 by adjusting the closing inventory for 1946. The reconstructed closing inventory for 1945 was thus determined to be $22,000, which included a valuation of $7,500 placed upon approximately 20 barrels of the old tile which had been in petitioner's warehouse since prior to 1939. Petitioner used the same reconstructed figure, $22,000, for its *216 opening inventory for 1945 in its records. Petitioner filed federal tax returns for 1944 and 1946 which were verified by its proper officers under oath. For 1945, Form 1120, corporation income and declared value excess-profits tax return, was filed with the collector of internal revenue for the district of Georgia. The form was not signed by any of petitioner's officers and was left blank. All information presented was included in a brief typewritten "Statement of Operations, Carmichael Tile Company for calendar year 1945," which recited that petitioner had no taxable income for 1945. No information with respect to inventories was presented in any form. The statement of operations was signed by only one of petitioner's officers and was not sworn to by anyone. The statement which petitioner filed appears as follows: Carmichael Tile Co.
Atlanta, Georgia
Continuation Sheet
Statement of Operations, Carmichael Tile Company
for calendar year 1945
A/c rec. gross
1944
$3,013.40
1945
7,600.76
Gain
$ 4,587.36
Cash on hand
1944
1,726.03
1945
2,087.58
Gain
361.55
A/c payable
1944
718.51
4,311.03
5,029.54
1945
146.08
3,850.89
3,996.97
Gain
1,032.57
5,981.48
Drawn by J. F. Carmichael
2,560.51
Drawn by D. L. Carmichael
1,586.50
10,128.49
Less loss 1943
503.95
Total gross gain
$ 9,624.54
Salaries
J.F.C.
$4,812.27
D.L.C.
4,812.27
$ 9,624.54
/s/ Carmichael Tile Co.
By D. L. Carmichael
*217 Respondent's agent made an examination of all available books and records in petitioner's offices. On the basis of that examination he determined that petitioner's opening inventory for 1945 was $3,749.64 and its closing inventory for 1945 was $22,000. On the basis of that adjustment and others not here in issue respondent determined that petitioner's taxable net income for 1945 was $22,351.17. Respondent also asserted a 25 per cent delinquency penalty on the ground that petitioner had failed to file timely tax returns for 1945 and a 5 per cent penalty for negligence on the ground that petitioner had failed to maintain adequate inventories and records. Petitioner's opening inventory for 1945 was not less than $11,249.64. Its closing inventory for 1945 was $22,000. These inventories include old stocks of tile of a market value of not less than $7,500. Petitioner maintained an account for reserve for bad accounts in the amount of $2,908.90 on its books, and this account appeared in its trial balance for 1945 but no deduction was claimed for reserve for bad accounts in its "Statement of Operations" for 1945. Petitioner failed to file timely tax returns for 1945 and was negligent *218 in failing to keep proper inventories and records from which its taxable income might be determined with reasonable accuracy. Opinion LEMIRE, Judge: When respondent's agent investigated the petitioner's liability for income and declared value excess profits taxes for 1945 he found that petitioner's books and records were poorly kept and contained no inventory for 1945. Petitioner had, in fact, not taken any physical inventory from 1933 to 1946 and had not maintained any book inventory records during that period, except for purchase and charge records since 1939 for current materials. Petitioner had reconstructed an opening inventory for 1946 by adjusting its closing inventory for that year in accordance with its current records kept during 1946. The reconstructed figure of $22,000 included a valuation of $7,500 placed upon stock of old tile which had been on hand in petitioner's warehouse since 1935, or earlier. Respondent's agent accepted the 1946 opening inventory figure of $22,000 and used it in his determination as the closing inventory for 1945, with full understanding as to how it had been reconstructed. Respondent's agent, however, did not accept petitioner's reconstructed *219 opening figure for 1945. Instead he examined the current purchase records maintained by petitioner from 1939 through 1944 and on the basis of that examination determined that petitioner's opening inventory for 1945 was $3,749.64. That book inventory figure took into account only materials purchased from 1939 through 1944, without regard to any materials in the warehouse prior to 1939. Respondent's agent made no attempt to compare this book inventory figure with the actual inventory in petitioner's warehouse. On the basis of that adjustment and others not here explained, respondent determined that for 1945 petitioner had gross income of $90,648.70, allowable charges against income of $68,297.53, and corrected business income of $22,351.17. There is no evidence as to exactly what charges against income respondent allowed and disallowed, with the exception of the adjustment of opening inventory for 1945. It is clear from all the evidence that petitioner was negligent in failing to maintain proper books and records from which proper tax returns could have been prepared for 1945 or from which respondent could clearly determine petitioner's exact taxable income for that year. However, *220 we are satisfied that respondent erred in accepting the reconstructed closing inventory for 1945, which petitioner prepared, with the knowledge that it contained a value of $7,500 for the old tile which petitioner had carried in stock since about 1935 but in refusing to accept petitioner's reconstructed opening inventory for 1945 to the extent that it included this same stock of old tile. His use of the opening book inventory for 1945 which included only the stock of currently purchased tile without any consideration for the old stock, although he did include the old stock in the closing inventory for 1945, does not clearly reflect the income from petitioner's operations in 1945. We think that petitioner has sustained its burden of proving that respondent's determination as to the amount of petitioner's opening and closing inventories for 1945 was erroneous to the extent that it did not take into account the $7,500 worth of old tile at the beginning of the year. We have frequently held that consistency in the calculation of opening and closing inventory is a fundamental requirement of the inventory method of computing income. Thomas Shoe Co., 1 B.T.A. 124; Sinsheimer Bros., Inc., 5 B.T.A. 918; *221 Boyne City Lumber Co., 7 B.T.A. 36; Wilson Furniture Co., 10 B.T.A. 1294; Justus & Parker Co., 13 B.T.A. 127, and many others. Where either the opening or closing inventory for a taxable year is adjusted without correspondingly adjusting the other inventory for the same year a distortion of income results. Thomas Shoe Co., supra; Sinsheimer Bros., Inc., supra; S. C. Toof & Co., 21 B.T.A. 916; Reuben H. Donnelley Corp., 22 B.T.A. 175. Petitioner has failed, however, to prove exactly how much tile was actually on hand at the beginning of 1945. The testimony at the hearing regarding how much tile would ordinarily be required to do the business petitioner did in 1945 and how much tile was actually in the warehouse would indicate that there was probably more than the amount of tile we have accounted for. However, there is insufficient evidence as to what specific kinds and quantities of tile were on hand or how much the tile was worth for us to determine here with reasonable accuracy the actual inventory on hand at the beginning of 1945. Respondent's disallowance of other adjustments for lack of *222 proof is sustained. John Wanamaker, Philadelphia, 22 B.T.A. 487, affd., 62 Fed. (2d) 401, certiorari denied, 289 U.S. 738. Petitioner on brief also urges that respondent erroneously added to its taxable income for 1945 an item of $2,528.86 for adjustment of a reserve for bad accounts. At the hearing respondent's agent testified that he made this adjustment in petitioner's accounts "to reduce the reserve for bad accounts to 5 per cent of accounts receivable," but respondent's deficiency notice computations do not reveal whether this adjustment was made a part of respondent's determination of deficiency. There is evidence that a reserve for bad accounts of $2,908.90 was carried on petitioner's books and records, and that amount appears in petitioner's trial balance for 1945. However, that amount was not claimed as a deduction from petitioner's taxable income in 1945 by petitioner in its return. There is no evidence that petitioner was entitled to a deduction for reserve for bad accounts in 1945 in excess of the 5 per cent of accounts receivable which respondent apparently allowed, and none may be taken in excess of that amount. If respondent *223 determined petitioner's income in part by disallowing a deduction for reserve for bad accounts and added the amount disallowed to income, that action was erroneous since petitioner did not claim such a deduction. However, if respondent determined petitioner's income from petitioner's books and records rather than from petitioner's return, his allowance of a deduction based upon his determination that a proper reserve for bad accounts was 5 per cent of accounts receivable must be sustained since petitioner has failed to prove that it is entitled to any greater amount. Final determination of this issue must be made under Rule 50 because of the lack of evidence before us with respect to respondent's computations. The next question is whether respondent correctly imposed the 25 per cent penalty provided by section 291, Internal Revenue Code, for petitioner's failure to file a timely return for 1945. Section 52(a), Internal Revenue Code, provides with respect to corporation returns as follows: "(a) Requirement. - Every corporation subject to taxation under this chapter shall make a return, stating specifically the items of its gross income *224 and the deductions and credits allowed by this chapter and such other information for the purpose of carrying out the provisions of this chapter as the Commissioner with the approval of the Secretary may by regulations prescribe. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer, assistant treasurer, or chief accounting officer. * * *" Section 291(a), Internal Revenue Code, provides as follows: "(a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which *225 case the amount so added shall be collected in the same manner as the tax. * * *" The evidence is that petitioner filed proper returns for 1944 and 1946, but for 1945, the year here involved, it merely filed a corporation income and declared value excess-profits tax return, Form 1120, which did not contain the information required on the form which is required by the law and the Commissioner's regulations. There was attached to the form a brief typewritten statement of operations which did not purport to give complete information as to petitioner's operations for that year and gave no information as to inventories. This statement did not contain sufficient information from which respondent could properly compute petitioner's taxable income for 1945. This statement was signed by only one of petitioner's officers and was not sworn to by anyone. Petitioner has introduced no evidence that its failure to file a proper and timely return was due to any reasonable cause and not due to willful neglect. It is therefore liable for the 25 per cent penalty provided by section 291. Uhl Estate Co., 40 B.T.A. 1223, affd., 116 Fed. (2d) 403; Theodore R. Plunkett, 41 B.T.A. 700, *226 affd., 118 Fed. (2d) 644. Finally, we conclude that petitioner's failure to keep inventories, as required by section 22(c), Internal Revenue Code, and respondent's Regulations 111, sec. 29.22(c), to maintain proper books and records and to file proper returns for 1945 was due either to negligence or to intentional disregard of the rules and regulations. Petitioner has offered no reasonable explanation for its failure to keep inventories and proper records and for its complete disregard of the Commissioner's regulations and instructions in filing its return. It is therefore liable for the 5 per cent penalty, provided in section 293(a). [1]
Decision will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. (a) Negligence. - If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency * * *.↩